**UNITED STATES of America, Petitioner,**

v.

**Norman SEPENUK, Respondent.**

**Civ. No. 94–758–MA.**

United States District Court,
D. Oregon.

Aug. 2, 1994.

W. Carl Hankla, Trial Atty., Tax Div., Dept. of Justice, Washington, DC, for petitioner.

Douglas Stringer, Portland, OR, for respondent.

## OPINION

MARSH, District Judge.

Petitioner filed this motion to enforce two IRS summonses which seek to discover the identities of clients who engaged in cash transactions of over $10,000 with respondent. Respondent filed seven forms 8300 with the IRS reporting cash transactions of over $10,000. The forms are incomplete in that they failed to disclose the name and other identifying information of either the payor or the person on behalf of whom such payments were made. Respondent provides that the seven forms relate to six clients and that the cases of four of those clients are now completed. Respondent has agreed to complete the forms as to the four past clients, but resists compliance with the subpoena insofar as it relates to forms which involve two existing clients.

 Immediately prior to oral argument, a respondent in a similar action, *United States v. Blackman,* Civ. No. 94–20–MA, filed a motion for an evidentiary hearing which this respondent joined in. The motion seeks the opportunity to examine, either at a court

hearing or sworn deposition, Special Agent Cheryl Butcher regarding the IRS' motivation in seeking to enforce the disputed subpoenas. At oral argument, the government opposed the request and I set a briefing schedule to permit the parties to address whether further discovery would be necessary. Upon review of those submission and the case law cited, I find that in the exercise of my discretion, cross-examination of Agent Butcher would be inappropriate in this case due to the lack of a preliminary showing of bad faith or harassment. *United States v. Samuels, Kramer and Co.*, 712 F.2d 1342, 1347–48 (9th Cir.1983); and *United States v. Church of Scientology of California*, 520 F.2d 818, 822–23 (9th Cir.1975).

Accordingly, the primary issues presented with respondent's objections to the IRS' motion to enforce summonses are as follows:

(1) Has the government failed to follow all of the requisite procedures to file this petition? Specifically, must the government first obtain a "John Doe," subpoena from the court?

(2) Do "special circumstances" exist to excuse the respondent's failure to comply with the government's subpoena—and if so, may the respondent establish special circumstances through an *ex parte* submission to the court?

In addition, respondent raises numerous arguments under the state ethical code and the First and Sixth Amendments of the Constitution on his own behalf and on behalf of his clients. Similar arguments have been expressly rejected by every court that has considered them[1] and are rejected here for the reasons set forth in those decisions. Thus, will I focus upon the two primary issues set forth *supra.*

*1. Procedure & the John Doe Subpoena*

Title 26 U.S.C. § 6050I provides that any person engaged in a trade or business must file a form 8300 for any cash transaction (single or multiple related) that exceeds $10,-000. Form 8300 is divided into three parts: part I requires disclosure of information identifying the individual from whom the cash payment was received; part II requires disclosure of any agent conducting the cash transaction on behalf of the individual identified in part I; and part II requires disclosure of the nature of the transaction. Congress incorporated section 6050I in the Tax Reform Act of 1984 and in so doing, rebuffed "extensive lobbying efforts to exempt attorneys from the reach of this amendment." *See Goldberger & Dubin*, 935 F.2d at 503.

■ Title 26 U.S.C. § 7602(a) empowers the IRS to serve a summons on any person without prior judicial approval, if the information sought is necessary to ascertain that person's tax liability. The government may seek to enforce such a summons pursuant to 26 U.S.C. § 7402(b) and 7604(a). *See e.g. Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 312–313, 105 S.Ct. 725, 726–27, 83 L.Ed.2d 678 (1985). If the IRS seeks information regarding the potential tax liability of an unnamed taxpayer, it must first obtain prior judicial approval through *ex parte* procedures pursuant to § 7609(f). This procedure is referred to as a third-party records custodian summons or the "John Doe" summons. *Id.*, at 313, n. 4, 105 S.Ct. at 726 n. 4.

In *Tiffany*, the IRS sought to obtain the names of licensees from a holding company for subsidiaries promoting tax shelters. The respondent argued that the IRS' primary purpose was to audit licensees and thus, the IRS had to comply with the John Doe sum-

---

**1.** *See United States v. Goldberger & Dubin*, 935 F.2d 501, 503 (2nd Cir.1991) (rejecting challenge under 4th, 5th & 6th Amendments as well as attorney-client privilege doctrine); and *United States v. Leventhal*, 961 F.2d 936, 937 (11th Cir. 1992); *see also In Re Grand Jury Subpoenas*, 906 F.2d 1485 (10th Cir.1990) (disclosure of fee arrangement does not violate 6th Amendment right to counsel). Although the constitutional issues under § 6050I have not been directly addressed by the Ninth Circuit, the court has noted in similar circumstances that an attorney could not

assert a Fifth Amendment defense to disclosure of fee information on behalf of his client because the privilege is "personal." *In Re Grand Jury Appearance of Michaelson*, 511 F.2d 882, 889 (9th Cir.1975).

As for any claim that disclosure might violate state law, since the adoption of the Federal Rules of Evidence, courts have uniformly held that federal common law of privilege, not state law, applies. *Goldberger*, 935 F.2d at 505; *Dole v. Milonas*, 889 F.2d 885, 889, n. 6 (9th Cir.1989).

mons procedure. The IRS submitted affidavits arguing that, although the focus of its investigation was to "ascertain the correctness" of returns filed by the respondent, it might make further inquiry into tax liabilities for licensees identified during the audit. *Id.,* at 314–315, 105 S.Ct. at 727–728. Like the mixed motive cases in the context of "pretextual" stops in the criminal law area, the Court held that the admitted existence of a potential dual motive did not trigger John Doe summons requirements so long as the trial court found "as a matter of fact" that the IRS was "pursuing a legitimate investigation" of the *respondent's* tax liability. *Id.,* at 318–19, 323–24, 105 S.Ct. at 729–30, 731–32, *citing United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Under *Powell,* to enforce a summons under § 7602(a), the IRS must show that the investigation will be conducted pursuant to a legitimate purpose, the inquiry may be relevant to that purpose, the information sought is not already within the IRS' possession and that the administrative steps required by the Code have been followed.

■ In this case, Agent Cheryl Butcher has submitted declarations in which she claims that she is investigating the respondent's compliance with section 6050I for the years 1987–1992. She explains that relative to this investigation, she seeks to "(1) ascertain the correctness of the incomplete Form 8300 information returns; (2) make Forms 8300, if necessary, where none have been filed; and (3) determine the liability, if any, of the respondent penalties." Butcher specifically disclaims that she is investigating the liability of anyone other than the respondent and notes that she knows "nothing about the unnamed clients except that they paid the respondent over $10,000 in cash." Finally, she concedes that any information gathered as part of her investigation of respondent may "be used to initiate investigations of the unnamed clients or third parties," but denies that any identifying information could form the "last link" in any ongoing investigation.

Respondent argues that I should disregard Agent Butcher's declaration and find that the IRS' purpose in issuing the summonses is obviously directed against his clients based upon the nature of the IRS' request and argues further, that there is no nexus between the items sought by the IRS and its claimed objective of ascertaining his potential tax accounting and/or liability. The government counters that it has the right, pursuant to the Code and regulations, to confirm the accuracy of any and all information reported on the 8300 forms and that it is therefore justified in its request to that end.

In *Tiffany,* the Supreme Court declined to disturb the trial court's acceptance of a very similar proffer of legitimacy from an IRS agent. *Id.,* at 318, n. 5, 105 S.Ct. at 729 n. 5. The Court noted that "by definition, the IRS is not engaged in a 'fishing expedition' when it seeks information relevant to a legitimate investigation of a particular taxpayer. In such cases, the incidental effect on the privacy rights of unnamed taxpayers is justified by the IRS's interest in enforcing the tax laws." *Id.,* at 322, 105 S.Ct. at 731. Respondent relies upon an unpublished district court decision to support an inherent suspicion of the IRS' motives.[2] In *United States v. Ritchie,* Civ. 3–92–610 (E.D.Tenn. Sept. 15, 1992), the trial court found that the government had to comply with the John Doe summons procedure against a law firm. *However,* the court did so only after two of the firm's attorneys testified that the IRS agent "personally assured them" that neither they nor their firm were under investigation. Based upon what the court deemed as the "very credible evidence" offered by the respondents, it found that the IRS was not conducting an investigation of the respondents and therefore should (and in fact had) complied with John Doe summons procedures.

2. Respondents also submitted a partial transcript of a hearing in which a United States District Judge for the Southern District of New York stated on the record that he found that the IRS' claimed dual purpose was a "sham." *See* Respondent's "Appendix" at p. A–9. Because the basis for this statement is not clear from the record submitted, I do not consider it as persuasive or even helpful authority.

I find that the government has satisfied the four *Powell* criteria and that it has established a *prima facie* basis for enforcement of the summons. I further find that respondent has failed to produce any evidence tending to show that the IRS' purported bases for this summons are a sham or that he is not in fact the actual target of this investigation. Accordingly, the government need not comply with the John Doe enforcement procedures and respondent's objection on this basis is denied.

### 2. *Special Circumstances*

■ Once the party seeking disclosure has met the initial burden of showing that it has a legitimate interest in the information requested, the individual asserting the privilege must demonstrate that the conditions of the *Baird* rule are satisfied. *United States v. Hodge*, 548 F.2d 1347, 1353 (9th Cir.1977), *citing Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960).

■ The attorney-client privilege against disclosure generally does not apply to either the identity of a client or to information regarding the amount paid for legal services or the form of such payment. *In Re Horn*, 976 F.2d 1314, 1317 (9th Cir.1992). Two related but equally limited exceptions to this general rule exist if disclosure of the identity of the client would "convey information which ordinarily would be conceded to be part of the usual privileged information between attorney and client" or provide a "last link" in an existing chain of incriminating evidence likely to lead to the client's indictment. *Id.*, *citing, Baird*, 279 F.2d at 632; *see also United States v. Gray*, 876 F.2d 1411, 1415 (9th Cir.1989) (explaining last link doctrine), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).[3]

■ Because respondent does not claim that disclosure might constitute a "last link" in any ongoing investigation, the focus of my inquiry rests upon the so-called "Baird exception." In *Baird*, several clients engaged an attorney for advice on tax matters and on the attorney's recommendation and with his assistance, anonymously tendered sums due for unpaid taxes to the IRS. The IRS then sought the identity of the clients even though no government investigation was pending into the tax liability of those clients. The Ninth Circuit held that the general rule that a client's identity is not protected by the attorney-client privilege was inapplicable when the identification would convey "information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client." *Id.*, at 632. The court concluded that the privilege applied because each client's identification showed an acknowledgement of guilt on the part of the client for the very offense on account of which the attorney was employed. *Id.*, at 633. Thus, in *Baird*, the clients' anonymity was a critical part of the basis for the retention of the attorney's services.

Following this decision, many courts misstated the law under *Baird* by focussing upon whether the information sought might "incriminate" the client. *See e.g. United States v. Sherman*, 627 F.2d 189 (9th Cir. 1980). In *In Re Grand Jury Subpoenas*, 803 F.2d 493 (9th Cir.1986), *corrected by*, 817 F.2d 64 (9th Cir.1987), the court specifically "disavowed" many of its own decisions following *Baird* emphasizing that the "relevant inquiry is *not* whether disclosure of the fee payor's identity would be incriminating or would lead to further grand jury indictments, but rather whether the requisite fee information represents a confidential professional communication." *Id.*, at 496, *see also Dole*, 889 F.2d at 889.

The rule enunciated in *Baird* has been described as a "narrow exception" applicable only in those "exceptional circumstances" in which disclosure would be tantamount to disclosure of a confidential communication. *Gray*, 876 F.2d at 1415–16. Numerous attempts to extend *Baird* have failed. *See e.g. Id.*, at 1416 (declining to extend *Baird* to attorney called to testify about notice in hearing regarding client's failure to appear for sentencing); *In Re Grand Jury*, 803 F.2d

---

**3.** One court has noted the possibility of an "affirmative link" exception—that is, where disclosure might not provide the last link, but an important one. *In Re Grand Jury Subpoena*, 913 F.2d 1118, 1124 (5th Cir.1990), *cert. denied*, 499 U.S. 959, 111 S.Ct. 1581, 113 L.Ed.2d 646 (1991).

at 496 (attorneys must identify third party paying fees absent showing that third party sought personal legal advice). Further, although no specific standard of proof necessary to sustain a *Baird* exception has been enunciated, the court has held that "generalized speculation" will be insufficient. *Dole*, 889 F.2d at 889.

The government raises a valid objection to the *in camera* affidavits which have made it impossible for them to respond in fairness to respondent's claim of privilege. Under *Hodge*, respondents bear the burden of establishing the applicability of the *Baird* exception and I find that respondent has clearly failed to meet this burden on the open record.

I have, however, reviewed the *in camera* submission filed by respondent and find that it fails to justify either exception to the general rule that the identity and fee arrangement of a client is not privileged. At most, respondent has demonstrated that disclosure might lead to future investigations that might incriminate his clients. Respondent has not shown that disclosure would provide a "last link" to an ongoing investigation or that his clients' identities or fee arrangements constitute exceptional privileged "communications."

One concern I do have however, relates to the breadth of the subpoenas. Specifically, I note that request Number 4 calls for "Any other identifying date for the individual(s) or organization(s) who conducted the transaction(s) or for whom the transaction(s) was conducted." In *Horn*, the court held that a grand jury subpoena directed against a criminal defense attorney was impermissibly overbroad where it requested "any records or documents reflecting or relating to any thing of value paid or tendered for legal services" or any documents relating to trust accounts. 976 F.2d at 1317–1318.

For example, in *Horn*, the court noted that letters of consultation and retainer agreements describing the intended scope of the attorney-client relationship could reveal the client's motivation for seeking legal representation and thus, such a demand constituted an "unjustified intrusion into the attorney-client relationship." *Id.*, at 1318.

Respondent may well possess documents which contain both confidential privileged information *and* identifying data if request Number 4 is broadly construed. Because identifying data is already requested in items numbered 1–3, I find that request number 4 is overly broad in scope and duplicative given the limited nature of the government's inquiry and threatens an unwarranted intrusion into potentially confidential attorney-client communications.

*Conclusion*

Based on the foregoing, the government's request number 4 is quashed. I further find that disclosure of the names, addresses, taxpayer I.D. numbers, and social security numbers of clients and/or third party payors (to the extent these are in the possession of the respondent) and any information relative to amounts and the general nature of the transaction (i.e. cash for services) are not privileged and must be disclosed. Accordingly, the government's petition to enforce IRS summons (# 1) is GRANTED as to items # 1–3 and 5 and DENIED as to item # 4; and respondent's motion for an evidentiary hearing (# 25) is DENIED.