**UNITED STATES of America, Petitioner,**

v.

**Nancy GERTNER and Jody L. Newman, personally and in their representative capacities as partners/officers of Dwyer, Collora and Gertner, Respondents.**

Civ. No. 94–11667.

United States District Court,
D. Massachusetts.

Jan. 11, 1995.

Judgement Jan. 13, 1995.

George P. Eliopoulos, U.S. Dept. of Justice, Tax Div., Washington, DC, for petitioner.

Jody L. Newman, Dwyer & Collora, Thomas E. Dwyer, Jr., Dwyer, Collora & Gertner, Boston, MA, Gerald B. Lefcourt, Lefcourt & Dratel, P.C., New York City, for Nancy Gertner.

Gerald B. Lefcourt, Dwyer & Collora, Boston, MA, for Jody Newman.

Andrew Good, Silverglate & Good, Boston, MA, Judith H. Mizner, Newburyport, MA, for Massachusetts Ass'n of Criminal Defense Lawyers.

Francis S. Moran, Jr., Boston Bar Ass'n, Boston, MA, for Boston Bar Ass'n.

Sheryl E. Reich, Gerald B. Lefcourt, Lefcourt & Dratel, P.C., J. Bruce Maffeo, Bernstein & Maffeo, New York City, for John Doe # 1.

Benjamin Fierro, III, Massachusetts Bar Ass'n, Boston, MA, for Massachusetts Bar Ass'n.

## ORDER AND MEMORANDUM OF DECISION

BRODY, District Judge.

This case presents an issue of first impression in this Circuit, namely, whether the Internal Revenue Service may require an attorney to disclose the identity of a client from whom the attorney received more than $10,000 in cash without violating the client's constitutional rights, the attorney-client privilege, or the attorney's ethical duty to keep client secrets confidential. The Court concludes that, under the special circumstances presented in this case, the information demanded by the IRS is privileged and need not be disclosed.

### I. Background

In 1981, according to Congressional estimates, underreported income in the United States resulted in an estimated $55 billion in lost tax revenues. *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991) (citing *General Explanation of the Revenue Provisions of the Joint Comm. on Taxation*, 98th Cong., 2d Sess. 491). Congress also determined that an additional $9 billion in lost tax revenue resulted from unreported income connected with illegal activities. *Id.* In response, Congress enacted 26 U.S.C. § 6050I, as part of the Deficit Reduction Act of 1984, which provided the Internal Revenue Service (IRS) with means to identify taxpayers with large cash incomes. Specifically, the legislation requires "[a]ny person ... engaged in a trade or business" to report any cash transaction that exceeds $10,000. 26 U.S.C. § 6050I. The provision also requires the disclosure of information such as: the name, address, and tax identification number of the person from whom the cash was received; and the date and nature of the transaction. *Id.*

The disclosure required by § 6050I is made on a form prepared by the IRS known as "Form 8300." *Doe v. United States*, 777 F.Supp. 590, 592 (E.D.Tenn.1991) (citing 26 C.F.R. §§ 1.6050I–1, 1.6050–1T), *aff'd sub nom., United States v. Ritchie*, 15 F.3d 592 (6th Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). The IRS states, in the directions to Form 8300, that: "Often smugglers and drug dealers use large cash payments to launder money from illegal activities ... [thus] compliance with the law provides valuable information that can stop those who evade taxes and those who profit from the drug trade and other illegal activities." Samuel J. Rabin, Jr., *A Survey of the Statute and Caselaw Pertaining to 26 U.S.C. § 6050I*, 68 Fla.Bar J. 26 (1994) (quoting Form 8300) (hereinafter "Rabin, 68 Fla.Bar J. at —").

Nancy Gertner and Jody Newman, attorneys at the law firm of Dwyer, Collora & Gertner, represent an unidentified client, re-

ferred to in this proceeding as John Doe. Doe was charged in a narcotics case "relating to years prior to 1991 and 1992" and "there are still pending criminal charges against [him]." (Newman Aff.Ex. G at 2.)

From June 1991 to April 1992, Doe paid Gertner and Newman in four cash transactions of $25,000, $17,260, $15,000, and $25,000. (Pet.Ex. A–3 to A–6.) Gertner and Newman reported the transactions to the IRS on four separate Forms 8300 dated June 25, 1991; August 5, 1991; November 14, 1991; and April 30, 1992; respectively.[1] *Id.* Respondents refused, however, to include any identifying information about Doe or the nature of the transaction. Respondents included with the forms, a statement explaining that "[t]he information requested violates the attorney client privilege, conflicts with the broader ethical obligation of an attorney[,] ... and violates the First, Fifth and Sixth Amendment rights of attorneys and their clients." (Pet.Ex. A–3.)

A series of letters between the IRS and Respondents ensued. Respondents informed the IRS, among other things, that there were criminal charges pending against Doe and that Respondents were currently representing him in those proceedings. Nevertheless, the IRS issued summonses demanding that Respondents appear on February 22 and 24, 1993 accompanied by certain records and other information. (Pet.Ex. A–1.) In part, the IRS sought the complete name, address, business or occupation, social security or tax-payer identification number, passport number, alien registration number and any other identifying data for the client involved in each of the transactions.[2] (*Id.*) Neither Respondent appeared as directed by the summonses.

On March 16, 1994, Respondents sought guidance from the Massachusetts Bar Association Committee on Professional Ethics. (Newman Aff. at Ex. I.) The Committee responded citing Disciplinary Rule 4–101 which provides that "a lawyer shall not knowingly ... [r]eveal a confidence or secret of his client" unless the client consents; the disclosure is permitted under the Disciplinary Rules; or the disclosure is "required by law or court order." (*Id.* at 1.) The opinion concluded:

> [G]iven your client's refusal to consent to disclosure, the Committee believes that, if you have any doubt about the lawfulness of Section 6050[I]'s disclosure obligations as they impinge on your obligations under DR 4–101, you should continue to resist disclosure of the client's identity, and require [the Government] to obtain a court order mandating disclosure.

(*Id.*) Both Respondents have continually refused to provide the information requested by the summonses.

The Government filed a Petition to Enforce the IRS Summonses in this Court on March 28, 1994. In support of its Petition, the Government provided the affidavit of So-

---

**1.** Gertner signed the forms dated June 25, 1991; November 14, 1992; and April 30, 1992; and Newman signed the form dated August 5, 1991. (*See* Pet.Ex. A–3 to A–6.)

**2.** In an attachment to the summonses, the IRS directed Gertner and Newman to bring with them the following:

> The unredacted, unaltered, originals of all records related to or associated with the attached Form(s) 8300 filed by you, including but not limited to accounting records, cash receipts journals, bank records, escrow account records, payment records, contracts, which contains [sic] the following information necessary to complete the attached Form(s) 8300:
>
> ... The complete name(s), address(es), business or occupation(s)[,] social security or tax-payer identification number(s) [and any other identifying data] of any and all client(s) (whether individual(s) and/or organization(s))

> [who conducted the transactions or] for whom the transaction(s) reported were completed.
>
> ...
>
> The passport number(s) and country(ies) of origin and/or alien registration number(s) for all foreign individual(s) or organization(s) who conducted the transaction(s) or for whom the transaction(s) was/were completed.
>
> ... The amount of cash received in each transaction or series of related transactions reported which was paid in $100 bills.... [t]he method(s) of payment, i.e., whether in U.S. currency or coin, or in foreign currency, for each tranaction [sic] or series of transactions reported. If paiid [sic] with foreign currency, a description of that payment.
>
> ... [The general nature including the date of the transaction reported on the attached Forms 8300 with a description of the services rendered.]

phia Ameno, an Internal Revenue Agent. Ameno asserted that she was investigating "the compliance by the law firm with Section 6050I of the Code, and its potential liability under Section 6721 through 6723 of the Code."[3] (Ameno Decl. ¶ 7.) She also alleged that the information sought by the summonses was relevant and not already in the IRS's possession. (*Id.* ¶¶ 10–11.) Finally, she averred that the appropriate administrative procedures had been followed. (*Id.* ¶ 12.) This Court concluded that the Government, through the Ameno affidavit, made the prima facie showing of good faith required by *United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). (4/20/94 Order at 4.) Accordingly, the Court issued an Order directing Respondents to show cause why the summonses should not be enforced. (*Id.*)

Subsequently, the Court granted a Motion on the part of the unidentified client, John Doe, to intervene in the proceeding. (6/1/94 Order.) The matter has now been thoroughly briefed and argued, including amici curiae appearances by the Boston Bar Association, the Massachusetts Association of Criminal Defense Lawyers, and the Massachusetts Bar Association.

## II. *Discussion*

Respondents and Amici argue that § 6050I, when applied to attorneys, violates the First, Fifth, and Sixth Amendments of the United States Constitution. They also argue that the disclosures required by § 6050I are protected by the doctrine of attorney-client privilege and that compliance with § 6050I would violate their ethical obligations, pursuant to Massachusetts Disciplinary Rule 4–101, to keep client secrets confidential. Finally, they argue that the summonses are void and unenforceable because the Government failed to provide the procedural protections required for issuing a "John Doe" summons under § 7609 of the Code.

## A. Procedure Followed by Government

The Court first addresses Respondents' argument that the Government failed to comply with the procedural requirements of § 7609(f) of the Internal Revenue Code.[4] Section 7609 governs summonses served, not on the taxpayer personally, but rather on third-party recordkeepers, such as banks, accountants, brokers, and attorneys. *See* 26 U.S.C. § 7609(a)(1)–(3). A summons served on a third-party recordkeeper may or may not "identify the person with respect to whose liability the summons is issued." 26 U.S.C. § 7609(f). A summons that does not identify the taxpayer under investigation is referred to as a "John Doe" summons. *Id.* Advance notice to the unnamed taxpayer, by the Government, is generally impossible in these situations. In order to protect the interests of the unnamed taxpayer, therefore, Congress requires prior judicial approval for the issuance of John Doe summonses. *Id.* No such prior judicial approval was either sought or obtained in this case.

The Government argues that it was not required to obtain prior approval because the summonses in this case were not John Doe summonses.[5] Instead, the Government asserts that the summonses in this case identified the taxpayer under investigation—the law firm. Agent Ameno, in her Affidavit, alleged that her investigation was intended "to ascertain the correctness of Forms 8300"

---

3. Sections 6721 to 6723 are the penalty provisions for non-compliance with § 6050I.

4. The Government argues that Respondents' argument is barred by the law-of-the-case doctrine because this Court has held that the Government made out a *prima facie* showing that all appropriate administrative procedures had been followed. (4/20/94 Order at 4.) This argument is without merit. *See United States v. Gilleran,* 992 F.2d 232, 233 (9th Cir.1993) ("At the enforcement hearing ... [t]he taxpayer may challenge and attempt to rebut the *prima facie* case of good faith the government has established or attempt

to show that enforcement of the summons would otherwise constitute an abuse of the court's process.").

5. At the hearing, the Government also argued, for the first time, that summonses issued in relation to § 6050I need not comply with the procedural protections of § 7609(f) even if they are considered John Doe summonses. (Tr. at 57–59.) The Government, however, has cited no cases, statutory language, or legislative history in support of this position. Nor has the Court found any such support. The Court therefore concludes that this argument is without merit.

filed by Gertner and Newman, and to determine "the liability, if any, of the law firm for penalties imposed by Sections 6721 through 6723 of the Code." (Pet.Ex. A at 1.)

Respondents argue, however, that the Government's assertion, that the law firm is the subject of its investigation, is "clearly pretextual." (Resp.'s Mem.Op.Pet. at 53; citing *United States v. Ritchie*, 15 F.3d 592 (6th Cir.1994).) Respondents contend that the omissions on the Forms 8300 they filed are apparent on their face and that the identity of the client is immaterial to the firm's tax liability. The Court agrees with Respondents. The claim by the Government, that it is investigating the law firm is simply not credible. *See Ritchie*, 15 F.3d at 598 (finding that an IRS affidavit, with language identical to the one filed in this case, was not credible). Instead, the Court is satisfied that, as in the *Ritchie* case, " 'the IRS is making a general search for the identities of cash-paying clients.' " *Id.* (quoting findings of the District Court). Accordingly, the Court concludes that the Government's contention that it was investigating the law firm is pretextual and that the summonses were, in fact, John Doe summonses.

■ Moreover, even if the Government truly intended to investigate the liability of the law firm, it may not obtain "information that is relevant only to the investigation of unnamed taxpayers" unless it complies with the procedural requirements set forth in § 7609(f). *Tiffany Fine Arts, Inc. v. United States*, 469 U.S. 310, 323, 105 S.Ct. 725, 731, 83 L.Ed.2d 678 (1985). The Government contends that the information sought "may be relevant to (1) determine the compliance by the law firm with the reporting requirements of Section 6050I of the Code; (2) ascertain the correctness of the Forms 8300 described ... above; and (3) determine the liability, if any, of the law firm for penalties imposed pursuant to Sections 6721 through 6723 of the Code." (Pet.Ex. A at 4.) In particular, the Government asserts that its

purpose in identifying the clients is to verify the information reported by the law firm on the Forms 8300 now in question. The Court does not find any credible support for this contention in the record. The Court concludes, therefore, that the Government should have complied with the procedural protections required by § 7609(f).

■ The Court is next faced with the question whether the Government's procedural infirmity deprives the Court of jurisdiction to reach the substance of Respondents' arguments. The Court concludes that it does not. *See Ritchie*, 15 F.3d at 599–601 (concluding that failure to provide procedural protections was harmless error). Moreover, because the Court does not require Respondents to comply with the summonses, as discussed below, forcing the Government to begin the summons process anew would be fruitless.

## B. Attorney–Client Privilege

■ "In keeping with [its] duty to avoid deciding constitutional questions presented unless essential to proper disposition of a case," *Harmon v. Brucker*, 355 U.S. 579, 581, 78 S.Ct. 433, 435, 2 L.Ed.2d 503 (1958), the Court looks first to Respondents' argument under the attorney-client privilege. Respondents argue that the disclosures required by § 6050I violate the attorney-client privilege whenever applied to attorneys in general, or, in the alternative, at least when applied to the facts of this case.

■ The individual asserting the attorney-client privilege has the burden of proving the existence of the privilege. *United States v. Wilson*, 798 F.2d 509, 512 (1st Cir.1986). In an action involving questions of federal law, the federal common law of privilege applies. Fed.R.Evid. 501;[6] and *Goldberger*, 935 F.2d at 505.

■ "It is well recognized in every circuit, ... that the identity of an attorney's client and the source of payment for legal fees are

---

**6.** Rule 501 provides, in relevant part that:
[T]he privilege of a ... person ... shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experi-

ence ... [except where] State law provides the rule of decision, [in which case,] the privilege of a ... person ... shall be determined in accordance with State law.

not normally protected by the attorney-client privilege." *In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485, 1488 (10th Cir. 1990) (citations omitted); *see also United States v. Strahl*, 590 F.2d 10, 11 (1st Cir. 1978), *cert. denied*, 440 U.S. 918, 99 S.Ct. 1237, 59 L.Ed.2d 468 (1979). The Court is in agreement with this general rule, and therefore holds that a blanket rule exempting attorneys from complying with § 6050I would be inappropriate.

Despite its rejection of a bright-line test, the Court must nevertheless consider the specific facts presented by this case because it is clear that the identity of a·client and the source of legal fees are privileged in certain special circumstances. *See Anderson*, 906 F.2d at 1488 (identifying several exceptions in which fees and client identity may be privileged). The *Anderson* court identified the "three major exceptions" to the general rule as "the legal advice exception, the last link exception, and the confidential communication exception." *Anderson*, 906 F.2d at 1488. The Court need consider only the first of these, the legal advice exception.

 Several courts, including the First Circuit, have recognized the legal advice exception. Under this exception, a client's identity or fee arrangement may be privileged "where there is a *strong probability* that· disclosure would implicate the client in the very criminal activity for which legal advice was sought." *Anderson*, 906 F.2d at 1488 (citing *Strahl*, 590 F.2d at 11–12) (emphasis added). The legal advice exception is obviously very narrow and strongly fact-driven. The leading case applying this exception is *Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960). In *Baird*, the Ninth Circuit held that an attorney was not required to disclose the identity of a client when that client consulted him regarding improperly paid taxes and the attorney subsequently forwarded an anonymous check to the IRS on the client's behalf. *Id.*

The First Circuit also considered this exception in *United States v. Strahl*, 590 F.2d 10 (1st Cir.1978). In that case, the Government charged Strahl with stealing Treasury notes and counterfeiting. *Id.* at 11. At trial, the Government introduced the testimony of Strahl's former attorney, who testified that Strahl gave him a stolen treasury note in partial payment for legal services. *Id.* The *Strahl* court concluded that the legal advice exception did not apply because "[t]here is no indication, either in the briefs or the record, that appellant Strahl went to [his former attorney] for legal advice concerning his counterfeiting activities." *Id.* at 12.

In this case, John Doe "has been charged in a narcotics case" and "there are still pending criminal charges against [him]." (Newman Aff.Ex. G at 2.) Those charges prompted Doe to seek representation from Respondents. The Court is convinced that there is a "strong probability" that disclosure of a large unexplained cash income could certainly be incriminating evidence in the pending narcotics prosecution.[7] Therefore, given the facts of this case, the information demanded by the Government is privileged under the legal advice exception as articulated by the First Circuit in *Strahl*. The Court emphasizes the narrow scope of this fact-based holding. The decision to find the disclosures required by § 6050I privileged must be made on a case-by-case basis.

The Court acknowledges that other courts have declined to hold that the disclosures required by § 6050I are privileged. *See United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991); *United States v. Leventhal*, 961 F.2d 936, 940–41 (11th Cir.1992); and *United States v. Ritchie*, 15 F.3d 592, 602 (6th Cir.1994). Of these cases, a thorough analysis of this question can be found in the Second Circuit's decision in *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 505 (2d Cir.1991). That court appears to have at least contemplated that the information required by § 6050I may be privileged under some circumstances. *See id.* ("absent special circumstances, ... the identification in Form 8300 of respon-

---

7. In fact, the IRS has itself suggested that it seeks information regarding large cash payments, at least in part, because such information can be "valuable [in] stop[ping] those who evade taxes and those who profit from the drug trade and other illegal activities." ·Rabin, 68 Fla.Bar J. 26 (quoting Form 8300).

dents' clients who make substantial cash fee payments is not a disclosure of privileged information.") (emphasis added).

The *Goldberger* court did not expressly identify what would constitute "special circumstances," however. *See id.* That court did hold that it was not enough to assert that the evidence "*might* incriminate the client." *Id.* (emphasis added). Instead, that court suggested that a "direct linkage" between the disclosure and the incrimination of the client was required. *Id.* This Court concludes that the disclosures required by the summonses in this case would provide such a "direct linkage." There is a strong probability that the disclosure would not only incriminate John Doe, but incriminate him in the very activity for which he sought legal advice. This Court is satisfied that if facts exist which could constitute the "special circumstances" identified by the *Goldberger* court, those facts exist here.

■ Determining that the information is privileged, however, does not end the inquiry. First, "[a] client, for whose benefit the attorney-client privilege exists, should not be permitted to claim the privilege, either directly or through his attorney, for the purpose of concealing his own ongoing or contemplated fraud." *Goldberger*, 935 F.2d at 506 (citations omitted). The Court does not find any evidence of an ongoing or contemplated fraud in this case. The fact that a large cash income may be incriminating on narcotics charges does not make that income an ongoing or contemplated fraud.

■ Next, a "privilege cannot stand in the face of countervailing law or strong public policy." *Goldberger*, 935 F.2d at 504 (citations omitted). The Second Circuit in *Goldberger* concluded that, even if the information were privileged, the privilege should not be applied because it "collides head on with a federal statute that implicitly precludes its application." *Id.* at 505. The *Goldberger* court reasoned that, because Congress did not exempt attorneys from the phrase "[a]ny person ... engaged in a trade or business" in § 6050I, it intended the provision to override any applicable attorney-client privilege. *Id.* at 506.

This Court disagrees with the conclusion in *Goldberger*. As this Court has concluded above, the summonses in this case are "John Doe" summonses issued to a third-party recordkeeper, the law firm. Congress has specifically stated that, when attorneys are summoned to appear as third-party recordkeepers, they may raise the attorney-client privilege. *See* H.R.Rep. No. 658, 94th Cong., 2d Sess., at 666 (1976) ("[w]here the summons is served on a person who is not the taxpayer (i.e., a third-party summons), the party summoned may challenge the summons for procedural defects ..., on [the] ground[s] of *the attorney-client privilege* (where applicable) and on other grounds....") (emphasis added).

The Court is also not persuaded that the application of the attorney-client privilege in this case would be contrary to public policy. Rather, there are competing public policy concerns, which in this instance, weigh in favor of applying the attorney-client privilege. First, the Court is mindful that this dilemma could have been avoided had Doe paid Respondents in some other manner. Unfortunately, he did not. Second, the Court recognizes that the IRS "has a legitimate interest in large or unusual financial transactions, especially those involving cash." *United States v. Ritchie*, 15 F.3d 592, 601 (6th Cir.), (quoting *United States v. Bisceglia*, 420 U.S. 141, 149, 95 S.Ct. 915, 920, 43 L.Ed.2d 88 (1975)), *cert. denied,* —— U.S. ——, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994). Section 6050I may well be an important tool for the IRS to investigate cash transactions and to uncover tax evasion; and Congress undoubtedly has a legitimate interest in preventing revenue losses resulting from tax evasion. Third, some courts have further suggested that exempting attorneys from § 6050I's reporting requirements would "grant law firms a potential monopoly on money laundering simply because their services are personal and confidential." *Ritchie*, 15 F.3d at 601.

Notwithstanding these policy arguments, the Court is satisfied that the balance of policy concerns weigh in favor of applying the attorney-client privilege in this case. First, it is unlikely that applying the privi-

lege in this case would give lawyers a "potential monopoly on money laundering." *Ritchie*, 15 F.3d at 601. Generally, lawyers would be required to report the identity of clients from whom they receive substantial cash payments.[8] An attorney may only assert the attorney-client privilege when the IRS seeks disclosures regarding a client who is being represented on currently pending criminal charges and the disclosures are likely to incriminate the client in that very proceeding.

Under these circumstances, the attorney-client relationship becomes more than just "personal and confidential." *Ritchie*, 15 F.3d at 601. More than just lost tax revenues or the method of paying one's attorney is at stake. The attorney-client relationship, during a pending criminal prosecution, implicates bedrock constitutional protections such as the right against self-incrimination and the right to be represented by counsel of one's choice. While the Court does not consider the constitutionality of § 6050I, these fundamental precepts must not be ignored when deciding how public policy impacts the application of the attorney-client privilege.

Each factual scenario should be considered separately and the policy issues weighed by the Court on a case-by-case basis. Courts could require attorneys refusing to disclose information required by § 6050I to make an *in camera* showing that their clients are in fact the subject of pending charges which could be substantiated by the § 6050I disclosures. On balance, the Court is satisfied that, given the specific facts of this case, neither the plain language of § 6050I nor public policy weigh against the application of the attorney-client privilege. Accordingly, the Court finds that the disclosures requested by the IRS summonses are privileged.

### C. Other Issues

Because the Court's ruling on the attorney-client privilege resolves this case, it need

not reach the remaining issues raised by Respondents.

### III. Conclusion

The Court concludes that the information sought by the IRS summonses issued in this case is privileged. Accordingly, the Government's Petition to Enforce the Summonses is *DENIED*.

*SO ORDERED.*

### *JUDGMENT*

In accordance with the Court's Order and Memorandum of Decision dated *January 11, 1995* denying the Government's Petition to Enforce Internal Revenue Service Summons in the above entitled action, it is hereby ORDERED judgment for the respondents.

---

8. Undoubtedly, attorneys accepting large cash payments should inform their clients that, under most circumstances, a completed Form 8300 must be forwarded to the IRS whenever they receive more than $10,000 is received. Respondents suggest that requiring an attorney to inform her clients that the attorney will likely have to report large cash payments received from the client places an undue strain on the attorney-client relationship. The Court disagrees. Although it may impact the client's decisions with regard to the method of paying fees, such a disclosure does not have an overly chilling effect on the lawyer's relationship with her client.