72 F.3d 1418
 77 A.F.T.R.2d 96-313, 64 USLW 2449,
96-1 USTC P 50,018,
96 Cal. Daily Op. Serv. 18,
96 Daily Journal D.A.R. 20
 UNITED STATES of America; Cheryl J. Butcher, IRS Revenue
Agent, Petitioners-Appellees,
v.
Marc D. BLACKMAN, personally and in his representative
capacity as a partner of Rasom, Blackman & Weil,
formerly known as Ransom, Blackman &
Simson, Respondent-Appellant.
 No. 94-35990.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 13, 1995.
Decided Dec. 29, 1995.
 
 David B. Markowitz and Robert D. Bulkley, Jr., Markowitz, Herbold, Glade & Mehlhaf, and Robert H. Hoevet, Hoevet & Snyder, Portland, Oregon, for respondent-appellant.
 Charles E. Brookhart and Gary R. Allen, United States Department of Justice, Washington, D.C., for petitioners-appellees.
 Appeal from the United States District Court for the District of Oregon.
 Before: BROWNING, RYMER and T.G. NELSON, Circuit Judges.
 T.G. NELSON, Circuit Judge:
 
 
 1
 Attorney Mark Blackman, personally and in his capacity as partner in the law firm of Ransom, Blackman & Weil, appeals the district court's order granting the petition of the Internal Revenue Service ("IRS") to enforce a summons served on Blackman pursuant to the Internal Revenue Code, 26 U.S.C. Secs. 7402(a) and 7604(a) ("I.R.C." or "the Code"). The IRS seeks information to complete several Internal Revenue Service Forms 8300 filed by Blackman in 1987, 1988, and 1991 pursuant to I.R.C. Sec. 6050I. We have jurisdiction under 28 U.S.C. Sec. 1292, and we affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 2
 I.R.C. Sec. 6050I requires a person receiving more than $10,000 in cash during a single trade or business transaction to file IRS Form 8300, providing the name, address, occupation and social security number of the payor, along with the date and nature of the transaction and the amount involved. The instant dispute concerns four such forms filed by Blackman, a partner in the Portland, Oregon, law firm of Ransom, Blackman & Weil, in 1987, 1988 and 1991. The forms were essentially complete save for information identifying the client-payors and the nature of the services rendered by Blackman or his firm in exchange for the cash. The IRS served a summons on Blackman in 1990 and again in 1992 asking for information to complete the forms. On both occasions, Blackman appeared before the IRS and refused to supply the information, claiming attorney-client privilege and his duty to maintain client confidences and secrets under Oregon law.
 
 
 3
 In February 1994, the IRS initiated an enforcement proceeding against Blackman in the federal district court. The court issued Blackman an Order to Show Cause, in response to which Blackman filed a memorandum and two affidavits, one of which was under seal. After hearing oral argument on June 23, 1994, in a proceeding consolidated with one involving Norman Sepenuk, another criminal defense attorney, the trial court granted enforcement of the IRS summons. Blackman timely appealed.
 
 
 4
 The district court incorporated portions of its opinion in United States v. Sepenuk, 864 F.Supp. 1002 (D.Or.1994), in its order of August 5, 1994, disposing of Blackman's case. We refer to the Sepenuk opinion as it applies to Blackman.
 
 ANALYSIS
 1. John Doe summons
 
 5
 As noted infra, I.R.C. Sec. 6050I provides that any person engaged in a trade or business must file a form 8300 for any cash transaction (or two or more related transactions) in excess of $10,000. 26 U.S.C. Sec. 6050I. Form 8300 requires disclosure of information identifying the payor, and any agent conducting the cash transaction on the part of the payor, as well as the amount and nature of the transaction. The IRS is empowered to serve a summons on any person from whom it seeks information necessary to ascertain that person's tax liability. 26 U.S.C. Sec. 7602(a). It may seek to enforce the summons through the jurisdictionally appropriate federal district court. 26 U.S.C. Secs. 7402(b), 7604(a).
 
 
 6
 If, however, the IRS seeks information regarding the potential tax liability of an unnamed taxpayer, it may not summarily issue a summons, but must follow the procedures laid out in 26 U.S.C. Sec. 7609. If the unnamed taxpayer is known to the IRS, it must provide him or her with notice and opportunity to intervene pursuant to 26 U.S.C. Sec. 7609(a) and (b). Where, however, "the IRS does not know the identity of the taxpayer under investigation, advance notice to that taxpayer is, of course, not possible." Tiffany Fine Arts, Inc. v. United States, 469 U.S. 310, 316-17, 105 S.Ct. 725, 728, 83 L.Ed.2d 678 (1985) (emphasis in original). In such cases, the IRS must obtain judicial approval pursuant to Sec. 7609(f) prior to issuing a summons. Id. at 317, 105 S.Ct. at 728; 26 U.S.C. Sec. 7609(f). A summons issued pursuant to Sec. 7609(f) is also known as a "John Doe summons." See id. at 313 n. 4, 105 S.Ct. at 726 n. 4.
 
 
 7
 To create a prima facie case validating the summons, the IRS must show the investigation has a legitimate purpose, that the inquiry is relevant to that purpose, that the information sought is not already in the possession of the IRS, and that it followed all requisite administrative steps. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-255, 13 L.Ed.2d 112 (1964). The IRS need only make a minimal showing with regard to these elements. United States v. Abrahams, 905 F.2d 1276, 1280 (9th Cir.1990). Declarations by the investigating agent suffice as to the first and second elements. Id. After the case is made, a "heavy burden" falls upon the respondent to disprove the IRS's assertions. Id. (quotations omitted).
 
 
 8
 We review for clear error the district court's ruling that the IRS has met the requirements for enforcement of its summons. Abrahams, 905 F.2d at 1280. "Review under the clearly erroneous standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.' " Concrete Pipe & Prod. v. Construction Laborers Pension Trust, 508 U.S. 602, ----, 113 S.Ct. 2264, 2280, 124 L.Ed.2d 539 (1993). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Service Employees Int'l Union v. Fair Political Practices, 955 F.2d 1312, 1317 n. 7 (9th Cir.), cert. denied, 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992).
 
 
 9
 Blackman argues that the IRS is really seeking information about his clients, and is not seriously investigating him or his law firm at all. He contends that the information sought by the IRS "can have absolutely no relevance to any legitimate investigation" of himself or the firm, and urges that the IRS be required to follow John Doe procedures. The IRS claims it is only investigating Blackman and not his clients, though it conceded in reference to Sepenuk that any information it acquires as a result of its investigation may be used to initiate investigation of unnamed clients or third parties. See Sepenuk, 864 F.Supp. at 1005. We must decide whether the IRS was required to obtain judicial approval prior to serving a summons on Blackman.
 
 
 10
 The Supreme Court held in Tiffany that even where the IRS admits it has a "dual motive"--that is, that its investigation is aimed at unnamed as well as named persons--a John Doe summons is not required, so long as the trial court determines as a matter of fact that the IRS's investigation of the named party is legitimate. 469 U.S. at 317-18, 324, 105 S.Ct. at 728-29, 731. Thus, even if the IRS were investigating Blackman's clients as well as Blackman himself, which it denies, it would not be obliged to follow John Doe procedures.
 
 
 11
 Blackman insists, however, that the IRS is solely interested in his clients, and asks the panel to consider the following out-of-circuit decisions: United States v. Ritchie, 15 F.3d 592 (6th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 188, 130 L.Ed.2d 121 (1994); and United States v. Gertner, 873 F.Supp. 729 (D.Mass.1995), aff'd in part, 65 F.3d 963 (1st Cir.1995).
 
 
 12
 The Ritchie court held that because the district court's conclusion that the a law firm's clients were the real and sole focus of an IRS summons directed at the firm was "not clearly erroneous," the IRS should have used the John Doe procedure.[1] 15 F.3d at 599-600. As the district court here noted, the trial court in Ritchie reached its conclusion on the basis of evidence that the IRS had assured members of the law firm it was not investigating them or their firm. See Sepenuk, 864 F.Supp. at 1005 (citing United States v. Ritchie, Civ. 3-92-610, 1992 WL 695477 (E.D.Tenn. Sept. 15, 1992)).
 
 
 13
 In Gertner, the district court found that the IRS's interest in the law firm under investigation was "pretextual" and that the IRS was in fact only interested in the law firm's clients. 873 F.Supp. at 734. The court concluded the Government should have used the John Doe procedure, but held it was unnecessary for the IRS to thus proceed because the information it sought was protected by the attorney-client privilege, and thus inaccessible to the Government. Id.
 
 
 14
 The First Circuit affirmed on circumscribed grounds. Finding that the district court's determination of the IRS's motives was not clearly erroneous, it held that the IRS was required to comply with John Doe procedures. See Gertner, 65 F.3d at 970. It deemed irrelevant the remainder of the district court's decision, including its discussion of attorney-client privilege. See id. at 971-74 (holding that the district court's discussion of privilege was either "surplusage" or the result of "miscalculat[ion]": "Any way we look at the situation, the district court's views as to the applicability vel non of the attorney-client privilege are not necessary to the result. Consequently, we have no occasion to consider [their] correctness.").
 
 
 15
 In both Ritchie and Gertner, the courts of appeal held the John Doe procedure was necessary based on the district courts' supportable findings that the IRS's investigation of the named parties was illegitimate. In the present case, by contrast, the district court found the investigation of Blackman and his firm to be legitimate under Powell. See Sepenuk, 864 F.Supp. at 1005. The district court concluded that the IRS had established its prima facie case as to both Blackman and Sepenuk, and held that neither Blackman nor Sepenuk had produced evidence to show that "the IRS' purported bases for this summons are a sham or that he is not in fact the actual target of this investigation." See id., 864 F.Supp. at 1006.
 
 
 16
 In the absence of compelling evidence to support Blackman's allegations concerning the IRS's motives for its investigation, we hold the district court's finding of legitimacy was not clearly erroneous and affirm that the IRS was not required to follow John Doe procedures in serving its summons upon Blackman.
 
 2. Attorney-client privilege
 
 17
 We review de novo the district court's rulings on the scope of the attorney-client privilege as they involve mixed questions of law and fact. Clarke v. American Commerce National Bank, 974 F.2d 127, 130 (9th Cir.1992). The burden of proof is on the party seeking to establish that the privilege applies. Id. at 129. The district court correctly noted that "since the adoption of the Federal Rules of Evidence, courts have uniformly held that federal common law of privilege, not state law applies." See Sepenuk, 864 F.Supp. at 1004 n. 1; Clarke, 974 F.2d at 129 ("Issues concerning application of the attorney-client privilege in the adjudication of federal law are governed by federal common law.") (citing United States v. Zolin, 491 U.S. 554, 562, 109 S.Ct. 2619, 2625, 105 L.Ed.2d 469 (1989); Fed.R.Evid. 501).
 
 
 18
 Blackman argues that the issue is not just one of privilege, however, but also of duty. According to Blackman, Oregon Revised Statute Sec. 9.460(5), in effect at all relevant times, not only codifies the attorney-client privilege, but also imposes a positive duty upon the lawyer to avoid disclosure of his client's confidences and "secrets."[2]
 
 
 19
 This argument is specious. Because the attorney-client privilege protects the client, not the attorney, see, e.g., Abrahams, 905 F.2d at 1283 n. 9, it necessarily entails a duty by the attorney to keep his client's confidences, or secrets, as the (former) Oregon statute provides. Oregon law's explicit spelling out of this duty did not thereby create an exception to the federal common law of privilege.
 
 
 20
 The Eighth Circuit recently considered a similar argument and concluded that "Congress cannot have intended to allow local rules of professional ethics to carve out fifty different privileged exemptions to the reporting requirements of 26 U.S.C. Sec. 6050I." United States v. Sindel, 53 F.3d 874, 877 (8th Cir.1995). We agree with this conclusion and accordingly consider Blackman's claims under the federal common law of privilege.
 
 
 21
 As a general rule, client identity and the nature of the fee arrangement between attorney and client are not protected from disclosure by the attorney-client privilege. Ralls v. United States, 52 F.3d 223, 225 (9th Cir.1995). However, we have recognized limited exceptions to this rule where disclosure would compromise confidential communications between attorney and client or constitute the "last link" in an existing chain of evidence likely to lead to the client's indictment. See id. and 227 n. 1; Tornay v. United States, 840 F.2d 1424, 1428 (9th Cir.1988); United States v. Gray, 876 F.2d 1411, 1415-16 (9th Cir.1989), cert. denied, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).
 
 
 22
 As there is no evidence that any of Blackman's clients who may be implicated in this dispute are currently the subject of ongoing investigation, the district court correctly found that the last link doctrine does not apply.[3] See Sepenuk, 864 F.Supp. at 1006. As the district court went on to observe, the exception to the general rule that fee arrangements and fee-payer identity are not privileged has had a somewhat tortuous history in the jurisprudence of this circuit. Id. The earliest case to consider the exception is Baird v. Koerner, 279 F.2d 623 (9th Cir.1960), applying California rather than federal law regarding attorney-client privilege, and finding client identity to be within the privilege where it tends to implicate the client in the very offenses for which he sought legal advice. Id. at 633.
 
 
 23
 In United States v. Hodge & Zweig, 548 F.2d 1347, 1353 (9th Cir.1977), this court proposed that the exception as stated in Baird "also reflects federal law." Blackman relies heavily on these two cases, and their suggestion that identity information is privileged where it tends to "implicate" the fee-payer. However, as the district court noted, this definition of the exception has since been discredited within our circuit. See Sepenuk, 864 F.Supp. at 1006-07. We have repeatedly held that the attorney-client privilege does not apply where disclosure might incriminate the client or fee-payer, but only where it would convey information tantamount to a confidential communication. See In re Osterhoudt, 22 F.2d 591, 593-94 (9th Cir.1983); In re Grand Jury Subpoenas, 803 F.2d 493, 497 (9th Cir.1986); corrected 817 F.2d 64 (9th Cir.1987); Tornay, 840 F.2d at 1427 (characterizing Hodge & Zweig's statement of Baird as dictum, and "giv[ing] it no precedential weight"); Dole v. Milonas, 889 F.2d 885, 889 (9th Cir.1989); Ralls, 52 F.3d at 225.
 
 
 24
 In deciding whether either Sepenuk or Blackman had met his burden in establishing the applicability of the exception, the district court questioned whether it was appropriate to consider the in camera affidavits. In spite of its reservations, the court proceeded to review them. See Sepenuk, 864 F.Supp. at 1007. As a threshold matter, we observe that it was appropriate for the court to review these documents. See Clarke, 974 F.2d at 129; Dole, 889 F.2d at 890.
 
 
 25
 With reference to both Blackman and Sepenuk, the district court found, based in part on its review of the sealed affidavits, that the identity, fee arrangement and purpose information sought by the IRS was not privileged. See Sepenuk, 864 F.Supp. at 1007. The court denied as overbroad the IRS's request Number 4 calling for " '[a]ny other identifying dat[a] for the individual(s) or organization(s) who conducted the transaction(s) or for whom the transaction(s) was conducted.' " Id.
 
 
 26
 The district court specifically considered in its order Blackman's argument that two of the questioned transactions in his case did not involve fee arrangements. The court found as to the first non-fee related transaction that Blackman "has failed to establish that the transfer of funds related in any direct way to the purpose for which respondent was retained." As to the second, the court found that Blackman "has failed to establish that the temporary transfer of funds to his account constitutes a 'confidential' communication."
 
 
 27
 Based on his reading of Baird and progeny, Blackman argues that the district court misapplied the law. He states that because his receipt of the funds was "inextricably linked to the legal service his firm was retained to provide," the identity of the fee-payers and the services are privileged. Blackman is mistaken. As we stated in Ralls, "the correct test [ ] is whether the fee-payer's identity and the fee arrangements are so intertwined with confidential communications that revealing either ... would be tantamount to revealing a privileged communication." 52 F.3d at 226.
 
 
 28
 Attorney Ralls was subpoenaed to provide information concerning the identity of a fee-payer who retained him to defend a third party, where the fee-payer had advised Ralls of his involvement in the crime with which the defendant was charged. Id. at 225-26. We held that the fee arrangements and fee-payer's identity were therefore "inextricably intertwined with confidential communications" and protected by the attorney-client privilege. Id. at 226.[4] No such fact pattern exists here.
 
 
 29
 The Second and Eleventh Circuits have held that, absent extraordinary circumstances, Sec. 6050I does not conflict with traditional attorney-client privilege. See United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 504-05 (2d Cir.1991); United States v. Leventhal, 961 F.2d 936, 940 (11th Cir.1992) (following Goldberger ). We agree. As several courts have remarked, clients wishing to avoid disclosure are free to pay their counsel in some manner other than cash. Goldberger, 935 F.2d at 504; Leventhal, 961 F.2d at 941; and see Ritchie, 15 F.3d at 601 (same; "there is no reason to grant law firms a potential monopoly on money laundering simply because their services are personal and confidential.") Attorneys should inform clients proffering cash in excess of $10,000 for fees that they will normally be obliged to disclose fee-payer identity and the nature of the fee arrangement in filing Form 8300.
 
 
 30
 The Goldberger court further suggested that even if a communication might technically fall within the scope of the attorney-client privilege, the privilege must yield where it "collides head on with a federal statute that implicitly precludes its application." 935 F.2d at 505; and see Leventhal, 961 F.2d at 940 (quoting Goldberger with approval). We need not consider whether Sec. 6050I "trumps" the attorney-client privilege, as the Government argues these cases hold. Our case law spells out the narrow circumstances under which fee-payer identity and fee arrangements may be protected by the attorney-client privilege. Only in the extremely rare case will the receipt of cash for fees be so intertwined with the subject of the representation as to obviate compliance with Sec. 6050I. We are hard pressed to imagine such a case, and decline to provide an illustration.
 
 
 31
 We hold that Blackman has failed to establish that the circumstances involving the clients whose identities are at stake here are such that disclosure of the information sought in conjunction with Sec. 6050I would be "tantamount to [the revelation of] a confidential professional communication." Tornay, 840 F.2d at 1428.
 
 3. Blackman's Fifth Amendment privilege
 
 32
 Courts have rejected the argument that completion by an attorney of Form 8300 violates the client's Fifth Amendment rights. See Ritchie, 15 F.3d at 602; Sindel, 53 F.3d at 877. The privilege against self-incrimination is personal, and applies only to compulsion of the individual holding the privilege. Couch v. United States, 409 U.S. 322, 328, 93 S.Ct. 611, 615, 34 L.Ed.2d 548 (1973).
 
 
 33
 Blackman argues that his own Fifth Amendment rights are implicated, however, because he is the one being investigated. He avers the district court was mistaken in stating that only documents and not testimony is required of him, because the IRS petition refers to testimony as well as records. Blackman argues that under Curcio v. United States, 354 U.S. 118, 123-24, 77 S.Ct. 1145, 1149-50, 1 L.Ed.2d 1225 (1957), a custodian of records may not be compelled to condemn himself by his own oral testimony. He further claims, citing Fisher v. United States, 425 U.S. 391, 408, 96 S.Ct. 1569, 1579, 48 L.Ed.2d 39 (1976) and United States v. Doe, 465 U.S. 605, 613, 104 S.Ct. 1237, 1242, 79 L.Ed.2d 552 (1984), that even if testimony is not required, the very act of producing documents in this case would be incriminating because it would show that he had withheld information that was actually available to him. Blackman does not argue here that the contents of the records are privileged under the Fifth Amendment.
 
 
 34
 Insofar as Blackman may be required to testify orally at a hearing pursuant to enforcement of the summons, his Fifth Amendment argument is premature. United States v. Rendahl, 746 F.2d 553, 555 (9th Cir.1984) (a petitioner cannot invoke the privilege in appeal of summons enforcement order, but must wait until he appears before the IRS and raise the privilege with respect to questions asked or documents sought). Given the district court's denial of the IRS's request for " '[a]ny other identifying date for the individual(s) or organization(s) who conducted the transaction(s) or for whom the transaction(s) was conducted,' " Sepenuk, 864 F.Supp. at 1007, Blackman will likely be asked to testify for the limited purpose of identifying the records sought by the IRS. Under these circumstances, Curcio will not help him.
 
 
 35
 As the Supreme Court explained in Braswell v. United States, while Curcio drew a line between "oral testimony and other forms of incrimination" in holding that a custodian of records cannot be compelled to condemn himself by his own oral testimony in the absence of a grant of prosecutorial immunity, it distinguished "those cases in which a corporate officer was required to produce corporate records and merely identify them by oral testimony." Braswell, 487 U.S. 99, 114-15, 108 S.Ct. 2284, 2293, 101 L.Ed.2d 98 (1988). " 'Requiring the custodian to identify or authenticate the documents for admission in evidence merely makes explicit what is implicit in the production itself.' " Id. (quoting Curcio v. United States, 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225 (1957)).
 
 
 36
 As for the documentary information sought by the IRS, the "collective-entity" rule preserved in Braswell nullifies Blackman's Fifth Amendment argument. Id. 487 U.S. at 109, 108 S.Ct. at 2290. Partners in a law firm are included within the collective entity rule, id. at 108, 108 S.Ct. at 2290 (1988) (citing Bellis v. United States, 417 U.S. 85, 100, 94 S.Ct. 2179, 2189, 40 L.Ed.2d 678 (1974)), "which declares simply that corporate records are not private and therefore are not protected by the Fifth Amendment." Id. 487 U.S. at 109, 108 S.Ct. at 2290. A corporate custodian cannot claim a Fifth Amendment privilege with regard to corporate records, even if the records or the act of producing them might incriminate him personally. Id. at 111-12, 108 S.Ct. at 2291-92 (citing Fisher v. United States, 425 U.S. 391, 411, 96 S.Ct. 1569, 1581, 48 L.Ed.2d 39 (1976)).
 
 
 37
 Because Blackman may not rely upon the privilege to avoid producing records belonging to his law firm, we hold that the Fifth Amendment does not preclude enforcement of the IRS summons.
 
 4. Additional arguments
 
 38
 Finally, Blackman asserts that he wishes to "preserve [the following arguments] for possible later review": 1) the practice of law is not a "trade or business" under I.R.C. Sec. 6050I; 2) Sec. 6050I unconstitutionally interferes with: a) the Sixth Amendment right to counsel; b) his clients' Fifth Amendment right to remain silent; c) attorneys' and clients' First Amendment rights of attorney and client; and d) his clients' due process rights. As Blackman concedes, all of these arguments have been rejected by the courts that have considered them.
 
 
 39
 Because Blackman does not specifically argue any of these claims, we deem them waived and do not reach them. Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir.1992), cert. denied, 507 U.S. 1004, 113 S.Ct. 1645, 123 L.Ed.2d 267 (1993).
 
 
 40
 For the foregoing reasons, the district court's order is AFFIRMED.
 
 
 
 [1]
 The Ritchie court deemed that the facts of the case did not necessitate requiring the IRS to start all over, but warned the IRS that in the future, "if it cannot demonstrate a bona fide interest in investigating the tax liability of the party summoned, it must comply with Sec. 7609(f)." 15 F.3d at 600
 
 
 [2]
 Section 9.460(3) provided (prior to amendment in September 1991):
 "An attorney shall ... maintain inviolate the confidence, and at every peril to the attorney, preserve the secrets of the clients of the attorney."
 
 
 [3]
 Blackman relies on United States v. Gertner, 873 F.Supp. 729 (D.Mass.1995) to support his argument that attorney-client privilege should apply in cases like his. Apart from the fact that the First Circuit refused to affirm this part of the district court's opinion, see United States v. Gertner, 65 F.3d 963, 971-73 (1st Cir.1995), the district court in Gertner expressly limited its holding on attorney-client privilege to those cases where "the IRS seeks disclosures regarding a client who is being represented on currently pending criminal charges and the disclosures are likely to incriminate the client in that very proceeding." 873 F.Supp. at 737
 
 
 [4]
 We distinguished cases where the lawyer acts as a "mere conduit for the transfer of money," even where the fee-payer also sought the attorney's legal advice. Ralls, 52 F.3d at 226