USCA1 Opinion

 

 September 27, 1995 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1277 UNITED STATES OF AMERICA, Petitioner, Appellant, v. NANCY GERTNER, ETC., ET AL., Respondents, Appellees. _________________________ JOHN DOE, Intervenor, Appellee. _________________________ ERRATA SHEET ERRATA SHEET The opinion of this court issued on September 13, 1995, is corrected as follows: On page 18, note 7, line 3 change "he" to "the" UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 95-1277 UNITED STATES OF AMERICA, Petitioner, Appellant, v. NANCY GERTNER, ETC., ET AL., Respondents, Appellees. ____________________ JOHN DOE, Intervenor, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT  FOR THE DISTRICT OF MASSACHUSETTS [Hon. Morton A. Brody,* U. S. District Judge] ____________________ ____________________ Before Selya and Boudin, Circuit Judges, ______________ and Lisi,** District Judge. ______________ ____________________ John A. Dudeck, Jr., Attorney, Tax Division, U.S. Dep't of ____________________ Justice, with whom Loretta C. Argrett, Assistant Attorney ____________________ General, Gary R. Allen and Charles E. Brookhart, Attorneys, Tax ______________ _____________________ Division, were on brief, for appellant. Gerald B. Lefcourt, with whom Sheryl E. Reich, Lefcourt & __________________ ________________ ___________ Dratel, P.C., Bruce Maffeo, Bernstein & Maffeo, Thomas E. Dwyer, ____________ ____________ __________________ ________________ Jr., Jody L. Newman, and Dwyer & Collora were on joint brief, for ___ ______________ _______________ appellees. Judith H. Mizner, Andrew Good, Benjamin Fierro, III, and _________________ ___________ _____________________ Francis S. Moran, Jr. on joint brief for Massachusetts Ass'n of _____________________ Criminal Defense Lawyers, Massachusetts Bar Ass'n, and Boston Bar Ass'n, amici curiae. ____________________ September 13, 1995 ____________________ ____________________ *Of the District of Maine, sitting by designation. **Of the District of Rhode Island, sitting by designation. SELYA, Circuit Judge. This controversy features an SELYA, Circuit Judge. _____________ old-fashioned tug of war. Pulling in one direction is the Internal Revenue Service (IRS) which, for easily understandable reasons, is intent on learning the identity of persons who pay large legal fees in cash. Pulling in the opposite direction is a consortium consisting of two lawyers and three bar associations (appearing as amici curiae) which, for equally understandable reasons (fearing inter alia that disclosure may spur _____ ____ prosecution), is intent on safeguarding the identity of clients who pay in cash. In this case, the parties' positions hardened and a stalemate developed. The district court resolved matters in the lawyers' favor, refusing to enforce IRS summonses designed to obtain "client identity" information pursuant to section 6050I of the Internal Revenue Code (I.R.C.), 26 U.S.C. 6050I (1988 & Supp. V 1993). See United States v. Gertner, 873 F. Supp. 729 ___ ______________ _______ (D. Mass. 1995). The government appeals. We affirm (albeit on more circumscribed grounds than those enumerated by the lower court). I. BACKGROUND I. BACKGROUND Federal law, specifically I.R.C. 6050I and its implementing regulations, requires a person who receives more than $10,000 in cash during a single trade or business transaction to file a form (IRS Form 8300) reporting the name, address, occupation, and social security number of the payor, along with the date and nature of the transaction and the amount involved. See I.R.C. 6050I; 26 C.F.R. 1.6050I-1(e) (1995). ___ 3 At various times in 1991 and 1992, respondents Nancy Gertner and Jody Newman, then partners in a Boston law firm, filed forms reflecting four successive payments of hefty cash fees to the firm by a single client. Each of the forms was essentially complete except for the name of the client. The respondents advised the IRS that they were withholding the client's identity on the basis of ethical obligations, attorney-client privilege, and specified constitutional protections. These filings sparked a lengthy course of correspondence between the law firm and the IRS. In that exchange, members of the firm attempted on at least three occasions to determine whether the IRS wanted the omitted information as part of an investigation focused on the firm or to learn more about the unnamed client. The IRS did not deign to answer these inquiries. The parties remained deadlocked and the IRS issued summonses purporting to direct the respondents to furnish certain records and testimony anent the client's identity. The respondents declined to comply. The government then brought an enforcement action pursuant to I.R.C. 7402(a) & 7604(a), claiming that it wanted the information in connection with an investigation of the law firm's tax liability. On April 20, 1994, after perusing the complaint and the declaration of Revenue Agent Sophia Ameno, the district court issued an order directing the respondents to show cause why they should not be compelled to honor the summonses. 4 The court permitted the client to intervene pseudonymously. Thereafter, the respondents and the intervenor mounted two lines of defense. First, they asseverated that the IRS's alleged investigation of the lawyers was merely a pretext disguising its real objective learning more about the client  and that the government therefore should be required to follow the statutory procedure for issuing summonses affecting unidentified third parties.1 See I.R.C. 7609(f). Second, in ___ concert with the amici they insisted that various privileges and protections allow lawyers to shield their client's identity from the reach of such summonses. The IRS joined issue, asserting that it had employed the appropriate procedure; that the respondents had failed to show either that the supposed investigation of the law firm was a sham or that an improper motive tainted the summonses; and, finally, that no special protection of any kind attached to the desired information. When the day of decision dawned, the respondents asked the district court to take live testimony. The government opposed the request. The court eschewed the evidentiary hearing that the respondents sought but nevertheless refused to enforce  ____________________ 1Such a summons is known colloquially as a "John Doe" summons. The IRS cannot issue a John Doe summons defined by statute as a summons "which does not identify the person with respect to whose liability the summons is issued" without first securing court approval. I.R.C. 7609(f). The reason for requiring such approval is obvious: in the John Doe context, the court in effect "takes the place of the affected taxpayer" who, being unnamed, cannot herself be expected to know about let alone to oppose the summons even if it is irregular. Tiffany _______ Fine Arts, Inc. v. United States, 469 U.S. 310, 321 (1985). We _______________ ______________ discuss the mechanics of the preapproval process infra. _____ 5 the summonses. It found as a fact that the IRS's purported probe of the law firm's tax-related affairs was a hoax, and that the IRS should have complied with I.R.C. 7609(f) prior to serving the summonses. See Gertner, 873 F. Supp. at 734. Nor did the ___ _______ court stop there; it proceeded to hold that, under the circumstances here obtaining, the attorney-client privilege thwarted the IRS's demand for information concerning client identity. See id. at 734-37. This appeal ensued. ___ ___ II. ANALYSIS II. ANALYSIS We split our analysis into three segments. First, we limn the framework for determining whether the federal judiciary's imprimatur should be impressed upon an IRS summons. Next, we mull the district court's finding on the pretext issue under the deferential standard of review that pertains in this context. Lastly, we explain why the IRS's failure to comply with I.R.C. 7609(f) effectively ended the case. A. The Framework. A. The Framework. _____________ The IRS has broad authority to issue summonses under I.R.C. 7602 & 7604. Enforcement proceedings are designed to be summary, see Donaldson v. United States, 400 U.S. 517, 529 ___ _________ _____________ (1971); United States v. Freedom Church, 613 F.2d 316, 321 (1st _____________ ______________ Cir. 1979), and the court's role is simply to ensure that the IRS is using its broad authority in good faith and in compliance with the law. See Donaldson, 400 U.S. at 536; United States v. Kis, ___ _________ _____________ ___ 658 F.2d 526, 535 (7th Cir. 1981), cert. denied, 455 U.S. 1018 _____ ______ (1982). Thus, when a challenge to a summons is lodged, the IRS 6 must only satisfy the court that (1) its investigation is being conducted pursuant to a proper purpose, (2) the information sought in the summons is (or may be) relevant to that purpose, (3) the information is not already within the IRS's possession, and (4) all legally required administrative steps have been followed. See United States v. Powell, 379 U.S. 48, 57-58 ___ ______________ ______ (1964); Copp v. United States, 968 F.2d 1435, 1437 (1st Cir. ____ _____________ 1992), cert. denied, 113 S. Ct. 1257 (1993). _____ ______ In determining whether to enforce IRS summonses under these substantive standards, we do not write on a pristine page. This court has constructed a three-tiered framework for expediting such determinations. See Freedom Church, 613 F.2d at ___ ______________ 321; United States v. Salter, 432 F.2d 697, 700 (1st Cir. 1970); _____________ ______ accord United States v. Church of Scientology, 520 F.2d 818, 824 ______ _____________ _____________________ (9th Cir. 1975); United States v. McCarthy, 514 F.2d 368, 372-73 _____________ ________ (3d Cir. 1975). To mount the first tier, the IRS must make a prima facie showing that it is acting in good faith and for a lawful purpose. This burden is not taxing, so to speak. Courts repeatedly have confirmed that an affidavit of the investigating agent attesting to satisfaction of the four Powell elements is ______ itself adequate to make the requisite prima facie showing. See, ___ e.g., Sylvestre v. United States, 978 F.2d 25, 26 (1st Cir. 1992) ____ _________ _____________ (per curiam), cert. denied, 113 S. Ct. 1606 (1993); United States _____ ______ _____________ v. Lawn Builders of New Eng., Inc., 856 F.2d 388, 392 (1st Cir. ________________________________ 1988); Liberty Fin. Servs. v. United States, 778 F.2d 1390, 1392 ___________________ _____________ (9th Cir. 1985); Kis, 658 F.2d at 536. ___ 7 Once this minimal showing surfaces, the burden shifts to the taxpayer to rebut the good-faith presumption that arises in consequence of the government's prima facie case.2 The taxpayer is not at this stage required to disprove the ________ government's profession of good faith. See United States v. ___ _____________ Samuels, Kramer & Co., 712 F.2d 1342, 1348 (9th Cir. 1983); Kis, _____________________ ___ 658 F.2d at 540. She must, however, shoulder a significant burden of production: in order to advance past the first tier, the taxpayer must articulate specific allegations of bad faith and, if necessary, produce reasonably particularized evidence in support of those allegations.3 See Kis, 658 F.2d at 540; United ___ ___ ______ States v. Garden State Nat'l Bank, 607 F.2d 61, 71 (3d Cir. ______ _________________________ 1979); Salter, 432 F.2d at 700. This showing does not demand ______ that the taxpayer conclusively give the lie to the prima facie case, but only that she create a "substantial question in the court's mind regarding the validity of the government's purpose." Salter, 432 F.2d at 700; accord Church of Scientology, 520 F.2d ______ ______ _____________________  ____________________ 2The summons enforcement framework is reminiscent of the "proof structure" for proving intentional discrimination under Title VII. See Texas Dep't of Community Affairs v. Burdine, 450 ___ ________________________________ _______ U.S. 248, 252-55 (1981); McDonnell Douglas Corp. v. Green, 411 ________________________ _____ U.S. 792, 802-05 (1973). 3Although some cases refer to the taxpayer's "burden of proof" at this stage, see, e.g., United States v. Balanced Fin. ___ ____ _____________ _____________ Mgmt., Inc., 769 F.2d 1440, 1444 (10th Cir. 1985); Salter, 432 ____________ ______ F.2d at 700, those cases are not necessarily at odds with our description of the framework's second tier. The term "burden of proof" may refer to either a burden or production or a burden of persuasion. See Kenneth S. Broun et al., McCormick on Evidence  ___ _____________________ 336 (4th ed. 1992). Only the burden of production is at issue when the taxpayer attempts to rebut the IRS's prima facie showing and thereby justify further inquiry. 8 at 824; McCarthy, 514 F.2d at 376. To reach this goal, it is not ________ absolutely essential that the taxpayer adduce additional or independent evidence; she may hoist her burden either by citing new facts or by bringing to light mortal weaknesses in the government's proffer.  If the taxpayer satisfies this burden of production, the third tier beckons. At this stage, the district court weighs the facts, draws inferences, and decides the issue. To do so, the court frequently will proceed to an evidentiary hearing, taking testimony and exhibits from both sides. See Samuels, ___ ________ Kramer, 712 F.2d at 1347-48; Salter, 432 F.2d at 700. But there ______ ______ is no hard-and-fast rule compelling an evidentiary hearing. A district court may, in appropriate circumstances, forgo such a hearing and decide the issues on the existing record. See Copp, ___ ____ 968 F.2d at 1438 n.1; McCarthy, 514 F.2d at 373. ________ A question lingers at the third tier as to the continuing viability of the original presumption in favor of the IRS. The case law seems to suggest that the presumption endures and serves at this stage to saddle the taxpayer with the burden of persuading the judge, qua factfinder, that at least one of the ___ Powell elements is missing. See, e.g., Kis, 658 F.2d at 540 ______ ___ ____ ___ (stating that a taxpayer "can succeed only by showing by a preponderance of the evidence some improper use of the summons by the IRS"); Freedom Church, 613 F.2d at 319 ("The burden of _______________ proving an abuse of the court's process or the absence of one of the Powell elements of good faith is on the summonee."); see also ______ ___ ____ 9 United States v. Balanced Fin. Mgmt., Inc., 769 F.2d 1440, 1445 _____________ __________________________ (10th Cir. 1985). We are somewhat skeptical of this approach, especially given the Supreme Court's recent lesson on presumptions and burdens of proof in an analogous setting. See ___ St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2747 (1993) ______________________ _____ (holding that a Title VII plaintiff always bears the burden of persuasion despite the presumption in her favor created by her prima facie case). The Court's treatment of presumptions in Hicks is consistent with the basic principle, codified in the _____ Federal Rules of Evidence: In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. Fed. R. Evid. 301. We are hard-pressed to fathom why IRS enforcement proceedings should diverge from this principle. It is the IRS, not the taxpayer, that seeks to invoke the processes of the court; and, in a related vein, the court is instructed to grant the requested relief only when "sufficient proof is made." I.R.C. 7604(b). Though it certainly can be argued that "strong reasons of public policy" justify a burden-shifting scheme, Salter, 432 F.2d at 700, it would seem that the IRS's legitimate ______ interest in obtaining summary enforcement is satisfactorily addressed by the particularized burden of production imposed on 10 the taxpayer, without going the whole hog.4 See, e.g., United ___ ____ ______ States v. Euge, 444 U.S. 707, 719 (1980) (stating that in ______ ____ __ addition to the taxpayer's right to challenge a summons, the IRS ________ __ "must also establish [its] compliance with the [four recognized] good faith requirements"); McCarthy, 514 F.2d at 373 (suggesting ________ that "the Secretary should be prepared to prove the allegations of the complaint that the summons complies with the Powell ______ requirements"). While this point is intellectually interesting, we defer a definitive decision on it to a different day. After all,  ____________________ 4The cases suggesting that the taxpayer has the ultimate burden of persuasion rely principally on isolated statements extracted from Powell and United States v. LaSalle Nat'l Bank, ______ _____________ ___________________ 437 U.S. 298 (1978). Foremost among these statements is the Powell Court's comment that "[t]he burden of showing an abuse of ______ the court's process is on the taxpayer." 379 U.S. at 58. We are not confident that this slender reed can bear the strain that subsequent opinions have placed on it. Powell itself imposed the ______ burden on the IRS to "show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." Id. at 57-58. The Court's subsequent reference to proving an ___ abuse of process, read in context, seems to be confined to affirmative defenses, e.g., allegations of harassment in the conduct of an investigation. See id. at 58. ___ ___ By like token, the LaSalle Court's statement that _______ "those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service," 437 U.S. at 316, does little to prop up the government's burden-of-proof argument. The LaSalle Court held that, even if the IRS had a criminal _______ prosecution in mind, this fact would not constitute a per se improper purpose for a civil summons, because civil and criminal tax investigations are typically too intertwined to untangle easily. See id. at 314-16. Hence, the quoted statement applies ___ ___ only in situations where the taxpayer is seeking to avail herself of the "sole criminal purpose" defense to a summons. See, e.g., ___ ____ Copp, 968 F.2d at 1437. ____ 11 the respondents concede that the district court tacitly required them to prove improper purpose by a preponderance of the evidence, and they accepted the burden of proof without any objection. Consequently, we proceed on the assumption that the lower court's resolution of the issue will prevail only if the record suffices for a finding that the respondents carried the devoir of persuasion. B. The Finding of Improper Purpose. B. The Finding of Improper Purpose. _______________________________ With this structure in mind, we turn to the district court's determination that the IRS's stated purpose for issuing the summonses its avowed desire to investigate the respondents' law firm was merely a pretext to enable it to learn more about the intervenor. At the outset, we are constrained to note that the remarkably thin prima facie case established by Agent Ameno's declaration provides a shallow foundation for a presumption in favor of the government. While the declaration touches the requisite bases it contains the bareboned allegations needed for the government's prima facie showing it is utterly devoid of specifics. Though a conclusory affidavit is enough to satisfy the government's burden at the first tier of the framework, see, ___ e.g., Sylvestre, 978 F.2d at 26; Lawn Builders, 856 F.2d at 392, ____ _________ ______________ it can come back to haunt the proponent if it is not later supplemented by more hearty fare once the challenger succeeds in scaling the second tier. At any rate, the government effectuated its prima facie 12 showing with little room to spare. The burden then shifted to the respondents to produce evidence and/or allegations of sufficient force and exactitude to warrant further inquiry. To meet this burden, the respondents argued that the summonses should be shelved because the government's professed purpose  linking the summonses to an investigation into the law firm's tax liability was pretextual. Contrary to the government's dismissive suggestion, the respondents did not simply level the charge. In support of it, they submitted two affidavits. One affidavit incorporated the extensive correspondence between the firm and the IRS. The second affidavit chronicled the firm's meticulous attention to income reporting requirements, and asserted that the IRS already had the data it needed to determine whether the firm had fully complied with its tax-related obligations. In addition, the respondents documented several public statements which seem to imply that the IRS's purpose in issuing summonses to attorneys for the records of large cash-paying clients is designed less to monitor lawyers' compliance with the tax laws, and more to address money laundering, narcotics distribution, and kindred criminal activity on the part of lawyers' clients. See, e.g., ________________________________ ___ ____ IRS Publication 1544 (rev. Aug. 1994) (stating that Form 8300 is intended in part to help identify "smugglers and drug dealers [who] use large cash payments to `launder' money from illegal activities"); IRS News Release IR-93-113 (Dec. 7, 1993) ("The data [obtained through Form 8300] helps detect nonfiling, 13 unreported income, and money laundering often associated with narcotic trafficking and other illegal activities by some of the customers and clients of the businesses required to file."). Finally, the respondents pointed out that the Ameno declaration, which purported to describe the ongoing investigation of the law firm, was nothing but boilerplate.5 The lower court concluded on this chiaroscuro record that the government's supposed investigation of the law firm was a pretext for an anticipated investigation of John Doe. See ___ Gertner, 873 F. Supp. at 734. On appeal, the IRS rides two _______ horses into the breach. First, it maintains that the district court erred in stabling the summonses without holding an evidentiary hearing. Second, it posits that, in all events, the court's ultimate finding of pretext, based on the record before it, is unsupportable. Both steeds are lame. 1. The Need for an Evidentiary Hearing. The 1. The Need for an Evidentiary Hearing. _________________________________________ government's first question is easily answered. The decision whether to hold an evidentiary hearing in a given case generally rests within the sound discretion of the trial court. See, e.g., ___ ____ Weinberger v. Great N. Nekoosa Corp., 925 F.2d 518, 527 (1st Cir. __________ ______________________ 1991); United States v. Panitz, 907 F.2d 1267, 1273 (1st Cir. _____________ ______ 1990); United States v. DeCologero, 821 F.2d 39, 44 (1st Cir. _____________ __________  ____________________ 5The declaration matched, almost word for word, the declaration at issue in United States v. Ritchie, 15 F.3d 592 ______________ _______ (6th Cir.), cert. denied, 115 S. Ct. 188 (1994), and, as the _____ ______ government conceded at oral argument, was "the standard affidavit" that the IRS routinely uses in summons enforcement proceedings spurred by Form 8300 filings. 14 1987). This discretion remains fully intact when the business of the day is the enforcement of an IRS summons. See Fortney v. ___ _______ United States, 59 F.3d 117, 121 (9th Cir. 1995) ("We defer to the _____________ district court's discretion to decide if an evidentiary hearing on the question of enforcement of a summons is warranted."); Hintze v. IRS, 879 F.2d 121, 126 (4th Cir. 1989) (similar). ______ ___ Appellate review is, therefore, deferential; we will interfere with a district court's bottom-line decision to conduct or withhold an evidentiary hearing in a summons enforcement proceeding only if the appellant demonstrates an abuse of the trial court's substantial discretion. See Copp, 968 F.2d at 1438 ___ ____ n.1. We discern no abuse in this situation. At no time during the proceedings below did the IRS request an evidentiary hearing. Rather, it vigorously (and successfully) opposed the respondents' request for such a hearing. In other words, the government chose to roll the dice, apparently confident that Agent Ameno's conclusory declaration would withstand the respondents' allegations and evidence. Having gambled and lost, the government is in a perilously poor position to pursue the point. In any event, "[w]e regularly turn a deaf ear to protests that an evidentiary hearing should have been convened but was not, where, as here, the protestor did not seasonably request such a hearing in the lower court." Aoude v. Mobil Oil Corp., _____ _______________ 892 F.2d 1115, 1120 (1st Cir. 1989); see also Sylvestre, 978 F.2d ___ ____ _________ at 28 n.3 (explaining that a taxpayer's failure to request an 15 evidentiary hearing in the district court precluded consideration of his later claim that such a hearing should have been held); see generally CMM Cable Rep., Inc. v. Ocean Coast Props., Inc., ___ _________ _____________________ _________________________ 48 F.3d 618, 622 (1st Cir. 1995) ("A party who neglects to ask the trial court for relief that it might reasonably have thought would be available is not entitled to importune the court of appeals to grant that relief."). 2. The Supportability of the Crucial Finding. The 2. The Supportability of the Crucial Finding. ___________________________________________ remaining question is whether the district court's finding of pretextual purpose is supportable. Determining the IRS's purpose in conducting an investigation is, like most motive-oriented explorations, a predominantly factbound enterprise. It follows that, absent a mistake of law, an appellate tribunal should disturb the district court's determination only if it is clearly erroneous. See United States v. Ritchie, 15 F.3d 592, 599 (6th ___ _____________ _______ Cir.), cert. denied, 115 S. Ct. 188 (1994); Copp, 968 F.2d at _____ ______ ____ 1437; Hintze, 879 F.2d at 1426; Ponsford v. United States, 771 ______ ________ _____________ F.2d 1305, 1307-08 (9th Cir. 1985). This means, of course, that if there are two or more plausible interpretations of the evidence, the district court's choice among them must hold sway. See Johnson v. Watts Regulator Co., ___ F.3d ___, ___ (1st Cir. ___ _______ ____________________ 1995) [No. 95-1002, slip op. at 22]. Here, no clear error looms. The government's case for enforcing the summonses depended entirely on Agent Ameno's self- serving declaration (which, as we have previously indicated, is a 16 web of unsubstantiated conclusions). In contrast, the respondents fashioned a sufficient evidentiary infrastructure to support an inference that the IRS's sole purpose in pursuing the summonses was to gain information about the lawyers' unnamed client. The law firm's affidavit, if credited, indicates that the IRS had no apparent reason to suspect it of any tax-related impropriety. And, moreover, the IRS's use of a generic affidavit, devoid of particularization, suggests that the IRS never really suspected the firm of any questionable activity. The IRS's stonewalling its unexplained refusal to answer the firm's repeated inquiries as to whether it was in fact under investigation points in the same direction. These facts, taken in light of the IRS's self-proclaimed practice of using information gleaned from attorneys' Form 8300 filings as a vehicle for investigating clients who pay counsel fees in cash, make the district court's conclusion that the IRS's interest lay only in the unidentified client seem quite plausible. We ____ conclude, therefore, that notwithstanding any presumption which may have accompanied the IRS's prima facie showing, the court below reasonably could have found that a preponderance of the evidence favored the respondents' claim of pretext.6 See ___  ____________________ 6The government argues that this finding is flatly inconsistent with the district court's original acceptance of the Ameno declaration as a sufficient basis for issuing a show-cause order. We do not agree. The acceptance of the IRS's first-tier proffer signifies nothing more than the court's acknowledgement that the IRS has mustered a prima facie showing for enforcement. Once the respondents met their second-tier burden of production and raised a legitimate question about the validity of the summonses, however, the court was free to reevaluate the original 17 Ritchie, 15 F.3d at 599 ("Although there was evidence to _______ contradict this view and the IRS strenuously objects to [the court's] finding, [the] findings are not clearly erroneous, and we therefore adopt them."). The government argues that the decision in United ______ States v. Tiffany Fine Arts, Inc., 718 F.2d 7 (2d Cir. 1983), ______ ________________________ aff'd, 469 U.S. 310 (1985), should propel us toward the opposite _____ conclusion. There, the Second Circuit upheld a summons issued for the dual purpose of investigating both a designated taxpayer and a John Doe, see 718 F.2d at 13-14, and the Supreme Court ___ affirmed, see 469 U.S. at 324. The government tries to shoehorn ___ this case into the Tiffany last. The fit, however, is imperfect. _______ In Tiffany, unlike here, the district court ascertained _______ as a matter of fact that the IRS had a dual purpose, that is, an actual interest in the investigation of both the taxpayer and the ____ ___ John Doe. See 469 at 317 (recounting district court's findings ___ of fact). In this case, the district court ascertained, also as a matter of fact, that the IRS did not have an actual interest in ___ the investigation of the taxpayer (the respondents' law firm), but only in learning more about John Doe. Thus, the two cases ____ are not fair congeners except to the extent that, given Judge Brody's supportable factual finding that the summonses at issue here were not dual purpose summonses, the Supreme Court's opinion in Tiffany clearly indicates that we should respect that finding. _______ See id. at 322. And, once the judge determined as a matter of ___ ___  ____________________ proffer in light of the respondents' counter-proffer. 18 fact that the government's actual purpose in issuing the summonses was to further an investigation of the unnamed client, the follow-on conclusion that the government should have complied with the procedure for issuing John Doe summonses becomes irresistible.7 See id. ___ ___ We take no pleasure in upholding a finding that government actors constructed a pretext to avoid due compliance with statutorily prescribed requirements. But the court below did not reach this conclusion lightly and the record, carefully examined, does not give rise to a firm conviction that the court's judgment is wide of the mark. Accordingly, the finding of pretextual purpose must stand. C. The Remainder of the District Court's Decision. C. The Remainder of the District Court's Decision. ______________________________________________ Despite its double-edged determination that the IRS ought to have complied with the strictures of I.R.C. 7609(f), but did not do so, the district court proceeded to reach and  ____________________ 7At oral argument in this court, the government belatedly contended that the summonses should be enforced simply to effectuate compliance with the reporting requirements of section 6050I itself. This nascent contention materialized out of thin air; prior to oral argument, the government had attempted to justify the summons solely as a means of investigating whether the law firm had reported all the income required to be reported. Since the record reveals beyond hope of contradiction that the government's newly minted contention was not made below in any coherent fashion, we will not entertain it here. See United ___ ______ States v. Zannino, 895 F.2d 1, 17 (1st Cir.) (discussing a ______ _______ litigant's obligation to spell out its arguments squarely and distinctly in the trial court), cert. denied, 494 U.S. 1082 _____ ______ (1990); Patterson-Leitch Co. v. Massachusetts Mun. Wholesale _____________________ ______________________________ Elec. Co., 840 F.2d 985, 990 (1st Cir. 1988) (similar). In this _________ connection, we remind the government that "[p]assing allusions are not adequate to preserve an argument in either a trial or an appellate venue." United States v. Slade, 980 F.2d 27, 30 (1st ______________ _____ Cir. 1992). 19 resolve the other issues in the case. It is not entirely clear why the court chose to grapple with these issues. It may have intended to articulate an alternative ground for rejecting the summonses, or it may have thought the IRS's failure to comply with I.R.C. 7609(f) to be a specie of harmless error. We need not resolve the ambiguity. If the court extended its journey merely to memorialize a further basis for its decision, the additional holdings are surplusage and can be disregarded. See ___ Kastigar v. United States, 406 U.S. 441, 454-55 (1972) (rejecting ________ _____________ language "unnecessary to the Court's decision" as binding authority in subsequent cases). On the other hand, if the court ventured afield because it concluded that the government's bevue was harmless, the court miscalculated. We explain briefly. Congress passed section 7609(f) specifically to protect the civil rights, including the privacy rights, of taxpayers subjected to the IRS's aggressive use of third-party summonses. See S. Rep. No. 938, 94th Cong., 2d Sess. 368 (1976), reprinted ___ _________ in 1976 U.S.C.C.A.N. 3439, 3797; H.R. Rep. No. 658, 94th Cong., __ 2d Sess. 307 (1975), reprinted in 1976 U.S.C.C.A.N. 2897, 3203; _________ __ see generally Tiffany, 469 U.S. at 315-17 (discussing history of ___ _________ _______ 7609). Section 7609(f) accomplishes this goal by providing that a John Doe summons is not valid unless and until it is authorized by a judicial officer after a hearing (normally an ex parte hearing, given the nature of the problem). In the court proceeding, the IRS must establish that: (1) the summons relates to the investigation of a particular person or 20 ascertainable group or class of persons, (2) there is a reasonable basis for believing that such person or group or class of persons may fail or may have failed to comply with any provision of any internal revenue law, and (3) the information sought to be obtained from the examination of the records (and the identity of the person or persons with respect to whose liability the summons is issued) is not readily available from other sources. I.R.C. 7609(f). This requirement of judicial preapproval is an important component of the statutory scheme; it permits the district court to act as a surrogate for the unnamed taxpayer and to "exert[] a restraining influence on the IRS." Tiffany, 469 _______ U.S. at 321. The statutory protections cannot be cavalierly cast aside by either the executive or the judicial branch. Hence, if the enforcement proceeding results in a determination that the IRS does not in fact intend to investigate a named party, then the IRS cannot obtain the data it seeks without observing the mandate of section 7609(f). See id. at 322. ___ ___ So it is here. The court below supportably found that the IRS had no intention of investigating the tax-related liability of the respondents' law firm. Therefore, the IRS cannot obtain the identity of the anonymous client John Doe  by means of these summonses unless and until it runs the section 7609(f) gauntlet. To hold otherwise would be tantamount to assuming either that section 7609(f) is nugatory or that the IRS will always be able to fulfill the statute's demands. Such assumptions have no basis in law or in fact. The John Doe 21 summons procedures represent a basic legislative judgment about the importance of taxpayers' privacy and other rights and courts must respect that judgment. To be sure, the harmless error argument derives a superficial measure of credibility from Ritchie, a case in which _______ the Sixth Circuit held that, despite a finding of pretext, the IRS did not have to go back through the protocol mandated by I.R.C. 7609(f). See Ritchie, 15 F.3d at 600. The Ritchie ___ _______ _______ court thought that "it would exalt form over substance to make the IRS go through the motions" required by section 7609(f), only "to bring us back to where we are now." Id. at 600. Passing ___ over the court's somewhat casual view of the protections afforded by the John Doe summons procedures,8 and without ruling out any possibility of harmless error in this context, we think that under section 7609(f) form is substance, and that the procedure __ mandated by Congress generally must be followed. In all events, Ritchie is plainly distinguishable. _______ There, unlike here, an evidentiary hearing had been held, the statutory protections had been afforded "in spirit" if not literally, and the record contained sufficient information to persuade the court that the IRS had met "the substantive factors  ____________________ 8Ritchie suggests that the "statutory protections are not _______ strong in any event." 15 F.3d at 600 n.8. But strength and weakness are relative concepts, and section 7609(f) is not totally devoid of muscle. Among other things, the requirement that the IRS have a "reasonable basis for believing" that the unidentified taxpayer may have violated internal revenue laws, I.R.C. 7609(f)(2), differs significantly from the minimal showing the IRS must make under Powell to obtain judicial ______ enforcement of other kinds of summonses. 22 of 7609(f)." Ritchie, 15 F.3d at 600. We have no comparable _______ record before us, and no basis to assume that the IRS ultimately will pass the statutory test. In particular, among the other requirements for a John Doe summons, the IRS must demonstrate that it possesses a reasonable basis for believing that the unnamed taxpayer may have failed to comply with the tax laws. See I.R.C. 7609(f)(2). In this case, we have only Agent ___ Ameno's conclusory declaration, directed on its face at the respondents (not at John Doe). If this were sufficient to satisfy the imperatives of section 7609(f), then judicial preapproval would become a charade, and section 7609(f) a dead letter.9 We need go no further. Any way we look at the situation, the district court's views as to the applicability vel ___ non of the attorney-client privilege are not necessary to the ___ result. Consequently, we have no occasion to consider the correctness of the court's conclusions on those issues. III. CONCLUSION III. CONCLUSION The district court's finding that the summonses were not drawn in connection with a probe of the law firm's tax- related liability, but, instead, for the clandestine purpose of  ____________________ 9We note, too, that the Sixth Circuit explicitly warned the IRS that it was issuing a "one-time only" free pass. See ___ Ritchie, 15 F.3d at 600 ("We are not suggesting that the IRS may _______ in the future avoid going through the ex parte proceeding required by 7609(f), for now the IRS has fair notice that if it cannot demonstrate a bona fide interest in investigating the tax liability of the party summoned, it must comply with  7609(f)."). The government cannot legitimately expect another free pass this time around. 23 investigating the lawyers' unnamed client, John Doe, is supportable. This means that the government is legally bound to follow the prescribed procedure for the service of John Doe summonses. See I.R.C. 7609(f). It has not done so. Summons ___ enforcement should be denied for that reason, and that reason alone. We are mindful that restricting our disposition to this narrow ground leaves larger issues unresolved, see, e.g., United ___ ____ ______ States v. Sindel, 53 F.3d 874, 877-78 (8th Cir. 1995) (discussing ______ ______ ethical implications and applicability of attorney-client privilege in 6050I summons enforcement proceeding brought after attorney withheld client's identity); United States v. Leventhal, _____________ _________ 961 F.2d 936, 940-41 (11th Cir. 1992) (similar); United States v. _____________ Goldberger & Dubin, P.C., 935 F.2d 501, 503-06 (2d Cir. 1991) _________________________ (similar), and that these issues are freighted with consequence. But courts must resist the temptation to pluck issues from the stalk before their time. The judicial task, properly understood, should concentrate on those questions that must be decided in order to resolve a specific case. This is especially true when unsettled issues of broad public concern are afoot. See Eccles ___ ______ v. Peoples Bank, 333 U.S. 426, 432 (1948) (Frankfurter, J.); ____________ Ashwander v. TVA, 297 U.S. 288, 345-48 (1936) (Brandeis, J., _________ ___ concurring). In this sense, the science of horticulture is like the art of judging: yearning for the blossom when only the bud is ready enhances the growth of neither the flower nor the law. 24 Affirmed. Affirmed. ________ 25