**UNITED STATES of America and Office of Federal Housing Enterprise Oversight, Petitioners,**

v.

**Leland BRENDSEL, Respondent.**

**No. MISC.NO.03–MC–57.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 2, 2004.

Dennis E. Szybala, AUSA, United States Attorney's Office, Alexandria, VA, for Petitioners.

Edward J. Bennett, Williams & Connolly, LLP, Washington, DC, for Respondent.

## MEMORANDUM OPINION

BRINKEMA, District Judge.

Petitioners United States of America and the Office of Federal Housing Enterprise Oversight ("OFHEO"), the federal regulator of the Federal Home Loan Mortgage Corporation ("Freddie Mac"), seek to enforce an administrative subpoena for deposition testimony and document production against respondent Leland Brendsel, Freddie Mac's former Chief Executive Officer. The OFHEO issued the subpoena on October 10, 2003 in the course of a special examination of Freddie Mac relating to a restatement of its financial reports. On December 17, 2003, the OFHEO initiated an administrative enforcement proceeding against Brendsel, seeking to have his resignation from Freddie Mac reclassified as a termination for cause, which would limit severance and other payments due to Brendsel. Brendsel opposes enforcement of the present subpoena, arguing that the issuance under the authority of the special examination is pretextual because the OFHEO's true interest is in gathering information for the enforcement proceeding. For the reasons discussed below, we find that issuance of the subpoena was not pretextual or in any other respect in violation of the applicable statutes or regulations, and the petition will be granted.

### I. Background

On January 22, 2003, Freddie Mac announced that it would restate its earnings for 2002, 2001, and possibly 2000, due to a reevaluation of its accounting practices.

On June 7, 2003, the Director of the OF-HEO ("the Director") ordered a special examination of Freddie Mac relating to those accounting practices and the events leading to the departure of three senior executives, including respondent Brendsel.

The following facts, which are uncontroverted by the respondent, are included in the Declaration of David W. Roderer, a deputy general counsel to OFHEO who is responsible for the special examination. To conduct the special examination, the OFHEO requested documents and testimony from Freddie Mac and its officers, directors, and employees. Much of the information requested was provided voluntarily. In July 2003, the OFHEO advised counsel for Brendsel that it was seeking his testimony, and the parties negotiated proposed dates to take testimony in August. On July 29, 2003, the OFHEO issued a subpoena for Brendsel's testimony on August 14, 2003. Upon request of Brendsel's counsel, the OFHEO agreed to postpone Brendsel's testimony to August 29, 2003. A new subpoena was issued for that date, however, on August 25, 2003, Brendsel's counsel again requested a postponement. The same day, the OFHEO agreed not to enforce the subpoena for August 29, 2003, but reserved the right to subpoena Brendsel for another date. In September and October 2003, the OFHEO and Brendsel's counsel engaged in further negotiations over Brendsel's testimony. On October 10, 2003, the OFHEO issued a subpoena for Brendsel's testimony and document production on October 27, 2003. Brendsel did not appear on October 27, 2003.

On December 3, 2003, petitioners filed the instant action to enforce the administrative subpoena. On December 10, 2003, the OFHEO issued a "Report of the Special Examination of Freddie Mac." On December 17, 2003, the OFHEO filed against Brendsel a Notice of Charges, initiating an administrative enforcement proceeding to impose civil money penalties, require repayment of bonuses paid in 2000 and 2001, and forfeit any severance payments to which he would not be entitled if he were terminated for cause.

## II. Discussion

The OFHEO is the federal regulator of the Federal National Mortgage Association ("Fannie Mae") and Freddie Mac, known as the enterprises. 12 U.S.C. § 4501 et seq. The OFHEO is authorized to conduct examinations "whenever the Director determines that an examination is necessary to determine the condition of an enterprise for the purpose of ensuring its financial safety and soundness." 12 U.S.C. § 4517(b). The Director is authorized to issue subpoenas in the course of such examinations. 12 U.S.C. §§ 4517(f), 4641. The OFHEO is also authorized to take enforcement action and seek civil money penalties against an executive officer who violates statutes regulating the enterprises. 12 U.S.C. §§ 4631, 4636. The statutory authority to take enforcement action, however, does not grant the Director subpoena authority. Rather, discovery in enforcement proceedings is governed by regulations promulgated at 12 C.F.R. § 1780 et seq., which do not authorize discovery subpoenas for testimony. The subpoena for which the OFHEO seeks enforcement in this case was issued by the Director pursuant to his authority to conduct special examinations.

■ To enforce an administrative subpoena, a court must be satisfied that the administrative agency has shown that: (1) it is authorized to make such investigation; (2) it has complied with statutory requirements of due process; and (3) the materials requested are relevant to the authorized investigation. *E.E.O.C. v. Lockheed Martin Corp., Aero & Naval Systems,* 116

F.3d 110 (4th Cir.1997). Brendsel argues that the subpoena fails to satisfy any of those three requirements. Specifically, Brendsel argues that the subpoena exceeds the OFHEO's authority because it was issued for a special examination that has already been completed, and therefore does not relate to a safety and soundness examination of Freddie Mac. Respondent also argues that the OFHEO violated due process in issuing the subpoena by failing to respond to an administrative request to revoke the subpoena, as well as by violating regulatory confidentiality provisions and retaining outside counsel without authority to do so.

A. *Subpoena status after the OFHEO's December 10, 2003 report to Congress*

■ Brendsel's primary argument is that the present subpoena cannot be issued under the OFHEO's special examination authority because the OFHEO has already exercised all statutory authority it possesses to conduct a special examination into the restatement of earnings. Respondent points to two documents supporting his position: 1) the report to Congress of December 10, 2003 presenting "conclusions and recommendations of the special examination," and 2) a stipulation and consent order between the OFHEO and Freddie Mac that purportedly estops the Director from taking action against Freddie Mac and persons affiliated with it. Relying primarily on these two documents, Brendsel argues that the OFHEO has exhausted its statutory authority to conduct a special examination, and therefore that the OFHEO lacks authority to seek enforcement of the instant subpoena. Specifically, respondent argues that by advising Congress that Freddie Mac is safe and sound, the OFHEO no longer has any need to continue exercising its special examination authority.

The OFHEO responds that despite the December 10, 2003 report to Congress, it has the authority to continue an ongoing special examination into the safety and soundness of Freddie Mac "whenever the Director determines that an examination is necessary to determine the condition of an enterprise for the purpose of ensuring its financial safety and soundness." 12 U.S.C. § 4517(b). The OFHEO explains that a finding of present safety and soundness does not preclude review to ensure future safety and soundness. A financial institution's practices may be unsafe and unsound, even if the institution is currently safe and sound. *See Lindquist & Vennum v. FDIC,* 103 F.3d 1409, 1417 (8th Cir. 1997). According to the uncontroverted Roderer declaration, Freddie Mac's restatement created a safety and soundness concern because financial markets rely upon accurate and timely disclosure. Uncertainty about the accuracy of Freddie Mac's financial statements could increase the enterprise's cost of funds, imperiling its safe and sound operation in the future. The special examination is designed to identify and correct the problems that led to the restatement, so that any future restatements that could imperil Freddie Mac's safety and soundness can be avoided. The OFHEO argues that addressing these concerns is exactly what Congress intended in providing the Director with authority to order such examinations.

We agree with the OFHEO that its December report and conclusion that Freddie Mac is presently safe and sound does not deprive the OFHEO of its authority to continue its special examination to determine the future safety and soundness of Freddie Mac. Therefore, the Director is acting within his authority by seeking enforcement of the subpoena, despite the December report to Congress.

■ Brendsel also argues that the report to Congress shows that any special examination authority has been exhausted, because the report presents the conclusions and recommendations of the special examination. The OFHEO argues that the issuance of the report reflects a desire to keep the public informed of the progress of the investigation to date, but does not signal the end of the examination. According to Roderer, the conclusions presented represent the conclusions to date, but the OFHEO has reserved its right to make additional conclusions and recommendations. The OFHEO continues to examine the role of other parties, such as third party broker-dealers, and Brendsel has information relevant to this inquiry.[1] Therefore, the special examination remains open until the OFHEO obtains Brendsel's testimony and incorporates it into the examination.

### B. Subpoena status after the consent order

■ Respondent further claims that the stipulation and consent order between the OFHEO and Freddie Mac bar the OFHEO from continuing a special examination into events occurring before the date of the consent order. Article IV of the stipulation states:

> The Enterprise [Freddie Mac] agrees that the provisions of this Stipulation and Consent [Order] shall not inhibit, estop, bar, or otherwise prevent the Director from taking any other action affecting the Enterprise in connection with OFHEO's ongoing regulatory oversight of the Enterprise with respect to matters occurring subsequent to the date of the Order or with respect to matters relating to third parties not affiliated with the Enterprise (including separated senior officers of the Enterprise) if, at any time, the Director deems it appropriate to do so to fulfill the responsibilities placed upon him by the several laws of the United States of America.

Brendsel urges us to read the provision that reserves the Director's right to take "any other action" on matters occurring after the date of the order as an implicit prohibition against his taking action on matters that have already occurred. In respondent's view, "action" encompasses not just enforcement action, but all examination and regulatory functions. Under this interpretation of Article IV, Brendsel argues that the Director has waived the entirety of his authority to investigate Freddie Mac with respect to anything that occurred before December 9, 2003.

We find respondent's interpretation of Article IV untenable in the context of the plain language of the stipulation and consent order, and in light of the OFHEO's statutory role as regulator. Essentially, Brendsel's interpretation of the term "action" to include investigation is not reasonable. Instead, we find that "action" must refer to enforcement actions such as cease and desist proceedings and civil monetary penalties against Freddie Mac— the very enforcement actions governed by the stipulation and consent order. The explicit limitations in Article IV further support this interpretation of "action."

---

1. Respondent suggests that, to address his concerns that his testimony may be improperly used against him in other proceedings, the subpoena be limited to the topics that the OFHEO has identified as subjects of the continuing inquiry such as third party broker-dealers. We reject this suggestion. If the OFHEO has authority to seek enforcement of the subpoena in the special examination, it may do so as to all matters for which it has special examination authority. Limits on potential use of Brendsel's testimony in any ancillary proceeding must be determined in that proceeding. *See RTC v. Walde*, 18 F.3d 943, 950 (D.C.Cir.1994).

Article IV prevents the Director only from taking further enforcement actions against Freddie Mac for matters that have already occurred, but explicitly leaves the Director free to continue regulatory and oversight activities relating to Freddie Mac for matters occurring at any time, or to take enforcement actions against persons no longer affiliated with Freddie Mac, such as Brendsel. The language of the consent order itself also supports this interpretation because the order requires Freddie Mac to file reports with the OFHEO on changes to practices of the board of directors and senior management, internal controls, audits, and accounting, risk management transactions, and public disclosures and regulatory reporting. The requirement to submit reports clearly envisions that the OFHEO will continue to exercise regulatory oversight to correct the problems that prompted the special examination, and that the stipulation and consent order do not preclude such oversight.

Along the same lines, respondent argues that the OFHEO may only take enforcement actions against 1) the enterprise (i.e. Freddie Mac), 2) executive officers of the enterprise (for up to two years after the officer has departed the enterprise), and 3) directors of the enterprise. *See* 12 U.S.C. §§ 4631(a), 4636(a), 4638. Respondent then claims that by resolving all enforcement actions against Freddie Mac itself and former executive officer David Glenn, and by initiating enforcement actions against former executive officers Brendsel and Vaughn Clarke, the OFHEO has acted against all persons and entities it is authorized to act against. Therefore, respondent argues, the OFHEO has no grounds on which to continue a special examination.

Brendsel's argument depends upon an assumption that the sole purpose of the OFHEO's special examination authority is to develop information that will lead to enforcement action. The basis for this assumption is not evident, and we do not read such a limitation into the special examination authority. Rather, the statute provides that the OFHEO may conduct a special examination "whenever the Director determines that an examination is necessary." 12 U.S.C. § 4517(b). Nothing in this broad grant of discretion suggests that it is limited to examinations that spawn enforcement actions. Through the Roderer declaration, the OFHEO establishes that its main goal in conducting a special examination is to gather information about the systems, controls, decision-making processes, corporate governance structures, and weaknesses in accounting practices that led to Freddie Mac's restatement of earnings. Such information is obviously relevant and useful to the OFHEO in its role as regulator regardless of whether it takes any further enforcement actions. Accordingly, Brendsel's argument that the OFHEO has exhausted its enforcement authority, even if correct, does not show that the OFHEO has exhausted its special examination authority.

## C. Pretext

■ Although respondent's arguments fail to establish that the OFHEO does not have authority to pursue an ongoing special examination of Freddie Mac and to issue subpoenas pertaining to the examination, we must next consider Brendsel's argument that the OFHEO's stated purpose for the subpoena at issue is pretextual. The issue of pretext is a governing standard for whether subpoenas issued for one type of proceeding are barred by a concurrent proceeding in a different context. Brendsel argues that the commencement of the enforcement proceeding against him bars enforcement of a subpoena issued for the special examination. *See United States v. Gertner,* 65 F.3d 963, 968–69 (1st

Cir.1995); *E.E.O.C. v. Fed. Home Loan Mortgage Corp.*, 37 F.Supp.2d 769, 772–74 (E.D.Va.1999); *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 321, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978). In *Gertner*, the First Circuit refused to enforce an IRS subpoena against a law firm, concluding that the true target of the subpoena was the firm's anonymous clients. Therefore, the IRS should have proceeded under different provisions reserved for subpoenaing anonymous persons. In the *EEOC* case, this court denied enforcement of an investigative subpoena because litigation had commenced, after finding that the EEOC's statutory authority to investigate and mediate discrimination disputes ended when private litigation commenced. Finally, in *LaSalle*, the Supreme Court held that, by statute, the IRS was not authorized to issue a civil summons once a criminal investigation had begun.

The OFHEO distinguishes the cases offered by Brendsel by arguing that they stand only for the principle that courts will not enforce agency subpoenas that are purely pretextual, not that initiation of enforcement proceedings necessarily moots any investigative function. Petitioners support their argument by pointing out that in *Gertner*, the court found the IRS subpoenas to be purely pretextual. They also emphasize that in *LaSalle*, the court ultimately upheld enforcement of the IRS civil subpoena even though criminal proceedings were subsequently initiated, after finding there was no evidence that the IRS was acting in bad faith and concluding that the IRS maintained coterminus interests in civil and criminal enforcement.

■ Lastly, petitioners effectively distinguish the *EEOC* case by arguing that the statutory authority of the EEOC and the OFHEO are dissimilar. In enacting employment discrimination laws, Congress established an integrated, multi-step enforcement procedure that divides enforcement and litigation authority between the EEOC and private plaintiffs. Relying on this bifurcated enforcement procedure, the court in the *EEOC* case found that the EEOC was divested of its authority to investigate a case once it issued a right-to-sue letter, thus ceding the investigative and enforcement role to a private plaintiff. 37 F.Supp.2d at 773. In contrast, the statutes governing the OFHEO do not envision a similar enforcement procedure that limits the role of the OFHEO in favor of private plaintiffs. Rather, the role of the OFHEO is more analogous to that of the Resolution Trust Corporation ("RTC") and the Securities and Exchange Commission ("SEC"), both of which maintain statutory regulatory obligations not shared with private litigants, and that may be exercised simultaneously with their enforcement powers. *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1518 (D.C.Cir. 1993); *SEC v. Dresser Industries*, 628 F.2d 1368, 1377 (D.C.Cir.1980) (en banc), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

The OFHEO argues that, as a federal agency charged with overseeing and regulating certain financial enterprises, it is entitled to proceed simultaneously with special examinations and enforcement proceedings. It supports this argument with authorities dealing with other agencies with similar responsibilities. In cases involving the Resolution Trust Corporation, for example, the D.C. Circuit held that the RTC's filing a civil suit did not terminate enforcement of its investigative subpoenas, because the investigative and enforcement proceedings had a different scope and purpose. *See Linde Thomson*, 5 F.3d at 1518; *Resolution Trust Corp. v. Walde*, 18 F.3d 943 (D.C.Cir.1994). The courts have taken a similar approach with other financial regulators. *See SEC v. Dresser*, 628 F.2d at 1377.

■ We find that under its statutory authority as a financial regulator, the OFHEO may pursue safety and soundness examinations and enforcement proceedings simultaneously, because its interests in investigation and enforcement are separate, and nothing in the OFHEO's statutory authority prohibits dual proceedings. Therefore, seeking enforcement of administrative subpoenas in the investigative context is not outside the OFHEO's authority.

■ As discussed above, Brendsel argues that the special examination subpoena must be pretextual, in light of the December 10, 2003 report to Congress, which Brendsel insists ended the special examination. Brendsel's pretext argument is undermined by the history surrounding the subpoena. The OFHEO had been trying to obtain Brendsel's testimony since as early as July 18, 2003. Because Brendsel actually created the delay he now complains of, his argument that the timing of the subpoena shows pretext is unconvincing.

Lastly, Brendsel's argument that pretext is established because the special examination has been completed has no merit. As the OFHEO correctly argues, it is not for Brendsel to decide when the special examination has ended or what the scope of a safety and soundness examination should entail. If the OFHEO asserts that the examination is ongoing and relates to safety and soundness, we must grant some deference to that determination. The OFHEO has shown that it is interviewing additional persons to determine the role that third parties played in Freddie Mac's restatement of earnings, and the report to Congress of December 10, 2003 indicated that further investigation of these third party practices continues. We also find it significant that the OFHEO has been trying to get information from Brendsel since July 18, 2003. As the former CEO of

Freddie Mac, Brendsel was a key management person whose testimony would obviously be critical to any regulator having a complete picture of what happened.

## D. Due process violations

■ Finally, Brendsel raises various due process challenges, however, petitioners have refuted all of them. First, Brendsel argues that the OFHEO has never formally ruled on his administrative request, filed on October 24, 2003, to revoke the subpoena pursuant to 12 U.S.C. § 4641(a)(4). The OFHEO responds that § 4641 authorizes the Director to revoke or quash his agency's subpoenas, but does not provide any procedure that would require him to rule on a challenge. By filing the instant petition for enforcement in this Court, the OFHEO has obviously denied Brendsel's request to revoke the subpoena. In this judicial forum Brendsel has had both notice and an opportunity to be heard. Therefore, even if the form of the process the OFHEO provided may not be ideal, Brendsel's due process rights would not be violated by enforcement of the subpoena.

Second, Brendsel argues that the OFHEO's retaining the law firm of Crowell & Moring to conduct the special examination is unauthorized, because 12 U.S.C. § 4517(c) only provides that the OFHEO may contract with other federal financial regulators for the services of examiners. The OFHEO relies on the same statute to argue that it is not as restrictive as Brendsel claims. The language provides that the Director "may contract" with other federal agencies, but it does not state that he must. Moreover, it also provides that the Director "shall appoint examiners," without any limitation as to who those examiners are. In our view, the OFHEO correctly argues that the plain language of the statute authorizes, but does not re-

quire, that examiners be appointed from other federal agencies. Further, 12 U.S.C. § 4517(e) authorizes the Director to obtain the services of any technical experts he considers appropriate for the examination. Therefore, retaining a private law firm does not exceed the OFHEO's statutory authority.

Finally, relying on 12 C.F.R. §§ 1703.6, 1703.8, and 1703.11, Brendsel argues that the subpoena violates the OFHEO's confidentiality regulations. We agree with the OFHEO that Brendsel misreads the scope of those regulations, which simply vest in the Director the authority to release information, and prohibit employees from releasing information without the Director's authorization. Requiring Brendsel to testify and produce documents does not violate any of these confidentiality provisions.

*III. Conclusion*

Petitioners have fully satisfied the Court that the contested subpoena was issued pursuant to the OFHEO's authority, was for relevant information, and complied with statutory due process. Moreover, Brendsel has not supported his claim that the OFHEO's invocation of the authority to issue the subpoenas for a safety and soundness examination was a pretext to mask an unauthorized gathering of evidence for an enforcement action against him. For these reasons, the administrative subpoena will be enforced.

An appropriate Order shall issue.

### ORDER

For the reasons stated in the accompanying Memorandum Opinion, the Petition for Summary Enforcement of Administrative Subpoena Duces Tecum is GRANTED, and it is hereby

·ORDERED that within 14 days respondent Leland Brendsel comply fully with the terms of the subpoena *duces tecum,* by appearing before a duly authorized desig-nee of the OFHEO and producing all books, documents, and other materials in accordance with the subpoena.

The Clerk is directed to forward copies of this Order and the accompanying Memorandum Opinion to counsel of record.